## BURR vs. WILLIAMS.

Representations of inability to pay the debt, though false—promises to pay, though broken—appeals to the sympathies of the creditor for indulgence, or statements untrue—are not such improper acts on the part of the debtor as to prevent the commencement of an action within the meaning of the 29th section of the statute of limitations (*chap.* 99; *Eng. Dig.*), as the creditor might, notwithstanding such acts, have commenced his suit at any time.

A replication to the plea of limitation, that the defendant, by leaving the county of Independence, where the plaintiff resided, and absenting himself therefrom,

prevented the plaintiff from commencing suit, etc., but not averring that the defendant resided in the county of Independence when the cause of action accrued; *Held*, bad on demurrer—" the county," referred to in the statute, (*sec.* 29, *chap.* 99, *Dig.*), being the county in which the debtor resides when the cause of action accrues.

After the dissolution of a partnership, one of the partners has not the right to execute a note in the name of the firm, so as to bind the other partner, even for a pre-existing debt of the firm, without special authority; but if the note be given to persons having dealings with the firm, before they had notice of the dissolution of the partnership, it will be binding upon the other partner.

The words "in liquidation," being under the signature to a note executed in the name of a firm, if they are proved to have been written when the note was made, and if, according to mercantile usage, they import a firm dissolved, it is a circumstance from which the jury might infer notice of dissolution to the payee.

An instruction which assumes a fact as proved—as that certain words under the signature to a note were written when it was executed, and was a part of the signature—is erroneous. When and by whom the words were written, and the inference to be drawn from them, are matters to be determined by the jury.

A part payment by one partner, after the dissolution of the firm, and before the debt is barred, forms a new point from which the statute of limitations begins to run as to another partner.

A part payment is of itself an admission of the existence of the debt, and an implied promise to pay the balance, unless accompanying circumstances or declarations negative the admission.

## Appeal from Independence Circuit Court.

.Hon. WILLIAM C. BEVENS, Circuit Judge.

FAIRCHILD, for the plaintiff.

The first additional replication to the plea was interposed under the 29th section of chapter 99 of the Digest, entitled LIMITATIONS. See *page* 700, *sec.* 29.

Did Williams, by " any improper act of his own, prevent the commencement" of this suit?

If he had not made the representations, the promises, the entreaties, that the replication narrates, he would have been sued in 1849. So the replication states, and on demurrer it is taken to be true.

The same authority that gave Williams the right to plead the

statute, also gave to Burr the right to be exempted from the statute, if Williams left the county, absconded, concealed himself, or, by any other act, prevented suit; and the sole question in the replication was, as before stated, whether Williams had acted improperly.

I cannot see why the first instruction of Burr was not given as asked, instead of being split into two sections, and given in the mutilated condition in which the latter part was given to the jury.

Evidence had been given tending to prove all of the hypotheses of the instruction. The finding of the facts was left to the jury, and the result of the facts, if so found, was certainly correctly stated in the instruction.

The instruction was hypothetical, related to facts about which evidence had been given. The law arising from the supposed finding was correctly stated, and Burr had a right to have his instruction given as he asked it. See *State Bank vs. McGuire*, 14 *Ark.* 537; *Floyd vs. Ricks*, 14 *Ark.* 295; *Stanton vs. The State*, 13 *Ark.* 324.

The refusal of the Court to give the second instruction asked by Burr, is a denial that a partner may bind the partnership to payment of a note given in the partnership business.

For the instruction does not imply, or admit, that the note was given by Williams after the dissolution of the partnership of Stone & Williams, but asks that if the fact be that Williams, without objection from Stone, acted as partner, down to and at the time of the date of the note, that the note, given in settlement of the business, was the note of the firm.

While a partnership exists, either partner may bind the firm by note, about any of the business of the firm; and whether the note be in settlement of old business, or given for the prosecution of new business, makes no difference. It is given in the business of the firm, before its dissolution, and the act of one of the firm binds all of its members. 3 *Kent* 41; *Smith's Merc. Law* 66, 73; *Warder vs. Newdigate*, 11 *B. M.* 177; *Le-Roy vs. Johnson*, 2 *Pet.* 197.

I admit the law to be that a partner, after dissolution of the partnership, cannot bind the firm by any new contract, not even by giving a note or acceptance for a debt of the firm, but until dissolution in fact, the members of the firm are partners, as between themselves, notwithstanding they are drawing in their business, although they are doing nothing but settling up the old business; and, as to those persons who have had no dealings with the firm, they are partners till general notice of the dissolution be given, while, as to those who have had prior dealings with the firm, they are partners until actual notice of the dissolution is expressly given.    See *Stillwell vs. Gray*, 17 *Ark.* 473, 477.

The fifth and sixth instructions asked by Burr only required an application to the facts of this case of the familiar principles of law, that a partnership exists as to third persons, until notice is given of the dissolution, and that personal notice of the dissolution must be given to former dealers with the firm. 3 *Kent* 66, 57; *Smith's Merc. Law* 30; *Kennedy vs. Bohannan*, 11 *B. M.* 113; *Vernon vs. Manhattan Co.*, 22 *Wend.* 192, 194, 198; *S. C.* 17 *Wend.* 517, *per* Cowen, J., 528, *per* Bronson, J.; *Ketcham vs. Clark*, 6 *Jhs.* 144; *LeRoy vs. Johnson*, 2 *Pet.* 199; *Mitchum vs. Bank of Ky.*, 9 *Dana* 166; *Lowe vs. Penny*, 7 *La. An. R.* 357; *Conro vs. Port Henry Iron Co.*, 12 *Barb.* 54; *Beers vs. Reynolds*, 1 *Kern.* 100.

The fourth and fifth instructions of Williams assume that the partnership of Stone & Williams was dissolved when Williams gave the note sued on, and for these evident errors, embodied in them and adopted by the Circuit Court, the judgment must be reversed.    *Floyd vs. Ricks*, 14 *Ark.* 295; *State Bank vs. McGuire*, 14 *Ark.* 637; *Atkins vs. The State*, 16 *Ark.* 593; *Jordan vs. Foster*, 6 *Eng.* 141, 142; *State Bank vs. Williams*, 6 *Ark.* 161.

No general notice of the dissolution of the partnership was ever made.    And, as to Walton & Sheafe, the firm of Stone & Williams was never dissolved till special notice thereof was given to them.

The note became due 4th April, 1847; in the fall of 1850, Stone made a payment upon it. This suit was brought in April, 1853. Then, if Stone was a party to the note, jointly bound with Williams for its payment, his payment of part of it, before the bar of the statute attached, created a new point from which the note would run against both Stone and Williams, unaffected by the statute of limitations for five years from the time of such payment. *Trustees R. E. Bank vs. Hartfield*, 5 *Ark.* 555, 556; *Biscoe vs. Jenkins.* 5 *Eng.* 110; *The State Bank vs. Woody,* 5 *Eng.* 643; *Wood vs. Wylds,* 6 *Eng.* 754; *Alsten vs. The State Bank,* 4 *Eng.* 459; *Ruddell vs. Folsom,* 14 *Ark.* 218; *Dig,, chap.* 99, *sec.* 19, *p.* 699.

The third instruction of Williams is in direct conflict with the law, as well as with all of Burr's instructions that were given, and for such instruction being given, if for no other cause, this case should be reversed.

The verbal understanding between Stone and Burr's attorney was certainly no stronger against Burr and for Stone than Burr's covenant not to sue Stone would have been; and that would have been no defence to Williams. *Couch vs. Williams,* 21 *Wend.* 424; *Brown vs. Williams,* 4 *Wend.* 366; *Bank of Chenango* 4 *Wend.* 607; *Miller & Fenton,* 11 *Paige* 20; *Frank vs. Green,* 5 *Barb.* 460.

Part payment is, itself, an acknowledgment of the validity of a debt, and an implied promise to pay the remainder, and to charge the jury that "part payment of a note does not take a case out of the statute of limitations, unless unaccompanied with an express or implied acknowledgment of further indebtedness on the note, and promise to pay it," could have no other effect than to mislead the jury.

The first instruction of Williams was, then, given in error.

The sixth instruction was a palpable invasion of the rights of the jury.

It is for the triers of the facts themselves to say, what fact may be " a circumstance," from which to infer other facts.

The jury is alone to weigh facts, to draw inferences from

facts. The judge had no jurisdiction over circumstances as ground for inferences, and to give such a charge was inconsiderate, erroneous and prejudicial to the plaintiff.

FOWLER & STILLWELL, for the defendant.

*Burr* did not, by his additional replications, bring himself within either of the exceptions in the statute. *Dig.*, 697, 698. Beyond it, the Court will not look. *State Bank vs Morris et al.*, 13 *Ark.* 291; *Ervin vs. Brown*, 1 *Eng.* 14; *Pryor vs. Ryburn*, 16 *Ark.* 694; 25 *Meigs* 582; 13 *S. & M.* 509; 2 *Wheat.* 25; 2 *J. C. R.* 29; 16 *Wend.* 572.

1. The part of the first instruction rejected, was bad. 3 *Kent's Com.*, p. 37; *Poignand vs. Livermore*, 5 *Mart. Lou. (N. S.)* 324; (3d *Cond. R.*) *Walker vs. Mellicken*, 9 *Ib.* 193, (1 *Cond.*); 3 *Espinass* 108; 1 *Starkie* 375; 2 *Vermont* 82; 2 *Johns.* 300; 2 *Dessau.* 40; 1 *McCord Ch. R.* 175; 5 *Mason* 56.

2. After the dissolution of the partnership, *Williams* could not create a cause of action against *Stone*. *Bell vs. Morrison et al.*, 1 *Pet. S. C. R.* 371, 372; 6 *Lou. R.* 683; 8 *Lou.* 568; 18 *Lou.* 484; 18 *Pick.* 505; 10 *Watts* 51; 13 *Cond.* 185; 2 *Blackf.* 371; *Hackley vs. Patrick*, 3 *Johns. R.* 536; 1 *Marsh.* 189; 3 *Munf.* 191; 2 *Barb. S. C. R.* 627; 2 *Starkie's Ev. (7th Am. Ed.)* 800; 4 *T. R.* 720; 2 *Humph.* 110; 6 *How. (Miss.) R.* 380. See, also, 2 *Comstock* 524; *Van Keuren vs. Parmlee et al.*, where the authorities are reviewed.

3. The only exception to this rule is where the signature and endorsement were made upon blank paper, before the dissolution, and filled up afterwards. Then the putting in circulation by one of the parties would bind the others. *Collier on Partnerships* 315.

4. The second is also bad. See authorities cited above. And for the further reason that, under it, the jury might have found for Burr, although more than five years intervened between the payment and the commencement of the suit.

5. The contract of partnership was a verbal agreement and

might be dissolved in the same way.  *Livermore vs. Poignand,* 5 *Martin Lou.* (*N. S.*) *R.* 324; 3 *Cond. R.* (*La.*) 562.

6. A part payment by Stone without an *unqualified* acknowledgment of a further indebtednees, would not even bind himself.  *Bell vs. Morrison et al.,* 1 *Pet. S. C. R.* 360; *Bangs vs. Hall,* 2 *Pick. R.* 368; *Sands vs. Gelson,* 15 *Johns.* 511; *Clementson vs. Williams,* 8 *Cranch.* 72; *Brown vs. Campbell,* 1 *Serg. & R.* 176; *Fries vs. Boislett,* 9 *Serg. & R.* 128; *Bell vs. Rowland, Hardin's R.* 301; *Gray vs. Sandige,* 2 *Bibb* 284; *Harrison vs. Handley,* 2 *Bibb* 443; *Ormsby vs. Letcher,* 3 *Bibb* 269; *Jones vs. Moore,* 5 *Bin.* 573; *Smith vs. Westmoreland,* 12 *S. & M.* 665; *Davidson vs. Morris,* 5 *S. & M.* 564, 571; *Baker vs. Stackpole,* 9 *Cow.* 433; *Walden vs. Sherbun,* 15 *J. R.* 424; *State Bank vs. Woody et al.,* 10 *Ark.* 642; 1 *Sneed* (*Tenn.*) 467; 2 *Humph.* 166; 4 *Yerg.* 174, 10, 15, 456, 716, 534; 4 *Humph.* 183.

7. As to the 3d instruction given on Williams' motion, see authorities cited above, and *Levy vs. Cadet,* 17 *Serg. & R.* 126; *Searight vs. Craighead,* 1 *Penn.* 135; *Evans vs. Duberry,* 1 *Marsh.* 189; 2 *Blackf.* 381; 1 *Pet. S. C. R.* 371.

The 8th is fully sustained by the authorities above cited, and *Steele vs. Matthews,* 7 *Yerg.* 315; *Russell vs. Gays, Mart. & Yerg.* 372, *et seq.; Brown vs. The State Bank,* 5 *Eng.* 134; *Beebe vs. Block,* 7 *Eng.* 596.

Mr. Chief Justice English delivered the opinion of the Court.

On the 6th of April, 1853, Edwin T. Burr commenced an action of debt against Septimus Williams, in the Independence Circuit Court, on the following instrument:

"New Orleans, 3d *April,* 1847.

$1,270 55.

One day from date, we promise to pay Walton & Sheafe, or order, twelve hundred and seventy 55-100 dollars, for value received, with interest at the rate of eight per cent. per annum from date.

STONE & WILLIAMS,
*In liquidation.*
Batesville, Ark."

" We assign the within to Edwin T. Burr, 3d April, 1847.

WALTON & SHEAFE,

*In liquid'n.*"

The defendant pleaded *nil debet*, and the statute of limitations of five years. To the plea of limitations the plaintiff filed three replications:

1st. That the note sued on was made by defendant, as a partner of the firm of Stone & Williams, for and on behalf of the said firm, which firm consisted of the defendant and one William H. Stone, whereby the defendant and said Stone, as partners composing the said firm of Stone & Williams, became liable to pay the said note according to its tenor and effect; and the said Stone being so liable, afterwards, to-wit: on the 1st of November, 1850, paid to the plaintiff, upon said note, and in part payment thereof, a sum of money, to-wit: the sum of four hundred dollars, which was after the assignment of the note to the plaintiff, at, etc., and this the said plaintiff is ready to verify, etc.

2d. And the said plaintiff, for an additional replication to the defendant's plea of the statute of limitations, by leave of the Court says *precludi non*, because, he says, that prior to the time that the note sued on was assigned to this plaintiff, the defendant had been a resident of the county of Independence, and had made such county his home, notwithstanding, in his occupation of steamboatman, his terms of absence therefrom had been frequent and protracted, and when this plaintiff took the said note from Walton & Sheafe, to whom it was given, in payment of so much of a debt as they owed to this plaintiff, he did so upon the eve of coming home to said county; that when he so took the said note in New Orleans, the defendant was not there; that the plaintiff knew of no place where the defendant would be so likely to be found as in this county, the residence of the plaintiff, and of the defendant also, as the plaintiff thought; and that he therefore brought the note with him, intending to present the same to the defendant when he should see him, but that said defendant, instead of coming to this

county often, as he had theretofore done, remained absent until the spring of 1849, at which time, and in the month of March, the defendant came into this county, and remained but a short time, to-wit: not exceeding a space of one month, and that during that time the said defendant, on being pressed for the note sued on, represented to the plaintiff that he was entirely destitute of money or means with which to pay the note; that he had nothing more than was necessary to take him to California by the overland mail route; that he was not the one that ought to pay the note; that William H. Stone, the other partner of Stone & Williams, was the person that ought to pay the note; and he requested the plaintiff not to sue him on the note, that if he would wait on him, and allow him to proceed on his contemplated journey to California, he would soon there become able to pay said note, and would pay the same if said Stone should not do so; and this plaintiff, relying upon the honor and honesty of said defendant, then refrained from suing the said defendant, upon the said note, which representations and conduct of defendant prevented the plaintiff from bringing suit on the note, as otherwise he should have done; that said defendant immediately left this State by the overland mail route to California, and never returned thereto till a short time before the beginning of this suit; and during the only time of his being again in this county, this suit was brought against him on his refusal to pay the note.

" And the plaintiff avers that the defendant, at the time of his being in the county in 1849, as before set forth in this plea, did not truly represent the facts to the plaintiff, in this, that instead of being destitute of money, and not having only enough to pay his expenses to California, he then had with him a large sum, to-wit, two thousand dollars in gold, over what was necessary to meet his expenses on his trip to California, and in this that said William H. Stone was not the person that ought to have paid the said note, the defendant, and no other, being such person; by which improper conduct of the defendant in so representing, and in so acting, he prevented the com-

mencement of the suit until he again returned to this county and State, in 1853, when this suit was begun, and as soon as it could be ascertained from him that he would not pay the same without. All of which this plaintiff is ready to verify and maintain; wherefore, notwithstanding the lapse of more than five years between the accrual of the cause of action and the commencement of this suit, this plaintiff prays judgment if he ought to be precluded from his debt, damages and costs.

3d. That the defendant, by leaving the county of Independence, and absenting himself therefrom, prevented the commencement of this suit till the 25th of March, 1859, when such prevention ceased, and this action was then brought within the time limited after the ceasing of such prevention, to-wit: on the 6th day of April, 1853, and the plaintiff is ready to verify, etc.

To the first replication the defendant entered a general rejoinder, in short upon the record. To the second and third he demurred, and the Court sustained the demurrer.

The cause was submitted to a jury at the September term, 1856, upon the general issue, and the issue to the plaintiff's first replication to the defendant's plea of limitation.

The plaintiff read in evidence the note and endorsement above copied. He also introduced William H. Stone as a witness, who testified that the note sued on was given by the defendant as one of the firm of Stone & Williams, composed of witness and defendant, to close up an account which the firm had with Walton & Sheafe, their commission merchants in New Orleans. That in the fall of the year, 1850, witness paid to the plaintiff $450, or some sum between $400 and $500, on a note that the plaintiff held against Stone & Williams; and except the note sued on, witness never heard of any note that was given to Walton & Sheafe by Stone & Williams.

*On cross examination,* he stated that the consideration for his paying the plaintiff the amount he did pay on the note, was that he was not to be further troubled on it, and that the plain-

tiff should look to the defendant for anything further on the note.

Such, the witness said, was the verbal agreement made between him and the plaintiff's attorney, in a settlement that embraced this note and other transactions between himself and the attorney.

Witness said that he considered that in so making the payment, he was buying his peace, not intending thereby to acknowledge the justness of the note, or his obligation thereon, and that he thought, notwithstanding the note, that upon a just settlement, Stone & Williams were not indebted to Walton & Sheafe; but that owing to Walton & Sheafe having kept produce of Stone & Williams on hand too long, it had fallen on their hands, and the note thus represented the state of the accounts between the firms at the time of the settlement—the date of the note.

That the partnership of Stone & Williams was dissolved in 1846, and that after its dissolution the defendant was steamboating on the Mississippi river, and made the settlement with, and gave the note sued on to Walton and Sheafe. Witness had no personal knowledge of the note being given, or for what it was given, but the signature of Stone & Williams was in the handwriting of Williams. He could not say in whose handwriting the words, " *In liquidation, Batesville, Ark.*," were. He supposed the note was given to close an unsettled account between the two firms, which he knew existed, and he did not know for what else the note had been given.

*Upon re-examination,* witness further stated that no notice was ever given in a newspaper of the dissolution of the firm of Stone & Williams, and if a notice was necessary to dissolve the partnership, he did not know that it was dissolved to this day.

That after Stone & Williams ceased to keep open a store for the sale of merchandize, which they did not do after 1846, Williams was away on the Mississippi river, and wound up some of the foreign outstanding business of the firm. Witness

settled up some business of the firm, and Robert Williams, as agent of the firm, settled up more than both of the partners, but neither of the partners was restricted from acting in the settlement of its business.

The above being all the evidence introduced by the parties, the plaintiff moved the Court to instruct the jury as follows:

" 1st. That if they find from the testimony, that the note sued on was given by Septimus Williams, the defendant, in the name of Stone & Williams, and that it was given to Walton & Sheafe, in the settlement of dealings which had, before the date of the note, been had between Stone & Williams and Walton & Sheafe, by which Stone & Williams fell in debt to Walton & Sheafe; and that the note was assigned by them to the plaintiff, as it purports to have been by the written assignment on the back of the note; and that the firm of Stone & Williams had not settled up its business until a time after the date of the note, and that Stone & Williams were not restricted from settling up such business—that in such case the note sued on was the note of Stone & Williams—(refused.)

" And that if Stone paid some sum on the note before it bebame barred by the statute of limitations, that if five years had not passed between the time of such payment till the beginning of this suit, that the suit is not subject to be defeated by the statute of limitations, and they must find for the plaintiff the amount of the note, deducting therefrom any amount that they find to have been paid on said note by the testimony—(given.)

" 2d. That if they find from the testimony that Williams, without objection of Stone, continued to act as partner in the settlement of the business of Stone & Williams down to and after the time of the date of the note, and that Williams gave the note sued on in the name of Stone & Williams, and to settle up business of Stone & Williams that was unsettled—that in such case the note sued on is the note of Stone & Williams, and that if Stone made any payment thereon before the note was barred by limitations, the note is not subject to the

plea of the statute of limitations, and they must find for the plaintiff. (Refused.)

" 3d. That if they find from the testimony that the note sued on was the note of Stone & Williams, and that the note was given on the 3d of April, 1847, at one day; that Stone paid an amount on it in the year 1850, or before five years had passed from the time the note was due, the statute of limitations would not run on such note unless suit had been delayed on it five years from the time of such payment—and they must find for the plaintiff. (Given.)

" 4th. That if they find that the note was given by Stone & Williams on 3d April, 1847, at one day, and that Stone paid $450, or any sum on it in 1850, and that this suit was begun in 1853, they must find for the plaintiff. (Given.)

" 5th. That if they find that Stone & Williams were engaged in winding up the business of said firm, at the date of the note, and had not given notice of the dissolution of their partnership, said partnership existed at the date of the note, for the purpose of settling up their business, and they must find for the plaintiff, if they also find that the payment had been made by Stone before the note had been due five years, and that this suit was brought in less than five years after such payment. (Refused.)

" 6th. That if they find from the testimony, that at the date of this note, there had been no notice given to Walton & Sheafe of the dissolution of the firm of Stone & Williams, the latter, as a partner, had a right to use the name of the firm in settling up its business, and such partnership was not dissolved as to Walton & Sheafe; and if they find that the note was given by Williams, to settle the dealings of Stone & Williams with Walton & Sheafe, the note is good and they must find for the plaintiff, if they find in the issue set up under the statute of limitations, that Stone made payment on the note in 185ˊ, or before the statute of limitations barred the note. (Refused.)

The Court refused to give the first paragraph of the first instruction, and gave the remainder of it; also gave the third

and fourth instructions, and refused to give the second, fifth and sixth, and the plaintiff excepted, etc.

The defendant moved the Court for the following instructions;

" 1st. In law, part payment of a note does not take a case out of the statute of limitations, unless accompanied by an acknowledgment, express or implied, of a further indebtedness on the note, and promise to pay it.

" 2d. If the jury believe from the evidence, that the payment made by the witness, Stone, was simply to buy his peace on account of the note in controversy, and not as an absolute payment amounting to an acknowledgement and promise to pay the residue of the note, they should find for the defendant on the plea of the statute of limitations.

" 3d. After the dissolution of a partnership, one of the late partners has no power to bind his late copartner by a partial payment on a note, in order to take the case out of the statute of limitations, whether the note be barred by five years limitation or not at the time of such payment.

" 4th. In law, after a dissolution of partnership, one partner has no authority to bind his late copartner by executing a promissory note in the name of the firm, without special authority given to him by the other partner to make such note.

" 5th. In law, after the dissolution of a partnership, one of the partners has no authority to bind his late copartner, by making a note in the name of the firm without a special authority for such purpose, even though the note be given in the settlement of an account existing against the firm.

• " 6th. That the fact of the note sued on being signed 'Stone & Williams, in liquidation,' is a circumstance in evidence before the jury, from which they may infer that, at the time of taking the note, Walton & Sheafe had notice of the dissolution of the partnership of Stone & Williams.

" 7th. If the jury believe from the evidence that the partnership of Stone & Williams was dissolved in 1846, or before the making of the note in controversy, unless it appears by the

evidence that Stone had specially authorized Williams to make such note, the note is not binding on Stone, if they believe from the evidence that Walton & Sheafe, at the time of making such note, had notice of such dissolution.

8th. That although the jury may believe from the evidence, that said William H. Stone actually paid the plaintiff $400 or $500 on account of the note in suit, yet if the evidence discloses to them the fact that such payment was made with the understanding, or accompanied by such expressions of Stone, at the time, as to repel the legal presumption and inference that he thereby promised to pay the balance of the note, the jury should find for the defendant on the plea of the statute of limitations."

The plaintiff objected to the giving of any of the above instructions except the *seventh*, but the Court gave them all, and the plaintiff excepted.

The jury returned a verdict in favor of the defendant, the Court rendered judgment in accordance therewith, and the plaintiff brought error.

The plaintiff's second replication to the defendant's plea of limitation was drawn, it seems, under the 29*th section of the* 99*th chapter of the Digest*, which is as follows:

" If any person, by leaving the county, absconding or concealing himself, *or any other improper act of his own*, *prevent* the commencement of any action in this act specified, such action may be commenced within the times respectively limited, after the commencement of such action shall have ceased to be so *prevented*."

Does the replication allege any " *improper act*" of the defendant, by which the plaintiff was *prevented* from commencing suit, within the meaning of this statute?

The word *prevent*, as now understood, and as manifestly used in the statute, means "to hinder," "to obstruct," "to intercept," etc. See *Webster*.

By the representations, promises, and appeals to the sympathies of the plaintiff, set forth in the replication, he may have

12

been *induced* to delay suit, but he was, clearly, not *prevented* from suing, for it was perfectly within his power to disregard all such representations, promises and appeals, and commence his action at the time they were made.

It not unfrequently happens that the debtor obtains indulgence from the forbearing creditor, by representations which turn out not to be true, and by promises which are never fulfilled. But in all such cases, the creditor grants the indulgence at the peril of losing his debt, by the interposition of the statute of limitations in the end, as a reward for his forbearance.

The demurrer to the second replication was properly sustained.

2. The substance of the third replication to the plea of limitions is, that the defendant, by leaving the county of Independence, and absenting himself therefrom, etc., *prevented* the plaintiff from commencing suit, etc.

The statute declares, that " if any person, by leaving *the county*, etc., prevent the commencement of any action," etc.

What county is meant by "*the county?*" We suppose that the Legislature intended to refer to the county where the debtor resides when the cause of action accrues. It is so expressed in the Territorial statute: See *Steel & McC. Dig.*, *p.* 382, *sec.* 5. See, also, *Smith ad. vs. Bogliolo*, 5 *Mo. R.* 344.

The third replication does not allege that the defendant resided in Independence county at any time.

3. After the dissolution of a partnership, one partner has not the right to execute a note in the name of the firm, so as to bind the other partner, even for a pre-existing debt of the firm.

A partner, after dissolution, may have general authority to settle the business of the firm, but he cannot, without special authority, give a note in the name of the firm for a firm debt. 3 *Kent Com.* 63; *Long vs. Story*, 10 *Mo.* 636; *Humphries vs. Chastain*, 5 *Geo. Rep.* 166; *Parker vs. Cousins*, 2 *Grattan* 372; *Bank of South Carolina vs. Humphries et al.*, 1 *McCord* 389; *Martin vs. Walton & Co.*, *Ib.* 18. *Sanford vs. Mickles et al.*, 4 *John. R.* 224; 3 *Pick.* 177.

But in the case of a dissolution of a partnership by the acts of the parties, until due notice is given of the dissolution, each partner will remain liable for the acts and contracts of the others in relation to the partnership, so far as they respect persons who have previously dealt with the firm, or have given credit thereto. *Story on Partnerships, sec..* 162.

As to persons who have been previously in the habit of dealing with the firm, it is requisite that actual notice of the dissolution should be brought home to the creditor; or at least that the credit should be given under circumstances from which actual notice may be inferred. *Ib.* 161.

In this case, Stone & Williams having dealt with Walton & Sheafe, if Williams executed to them the note sued on, in the firm name, in settlement of a pre-existing debt of the firm, before they had notice of the dissolution of the partnership, the note was binding upon Stone as well as Williams. (See *authorities above.*)

The Court below did not err in refusing to give to the jury the *first* paragraph of the *first* instruction moved by the plaintiff: nor in refusing to give the second instruction moved by the plaintiff.

The plaintiff's *fifth* instruction was properly refused, in the language in which it was proposed. The jury might have inferred from it that the note was binding upon Stone unless a public or general notice of the dissolution of the partnership had been given; when, if Walton & Sheafe had notice of the dissolution of the partnership, at the time Williams made the note in the firm name to them, it would not have been binding upon Stone, though no public or general notice of the dissolution had been given. Notice to the particular creditor is sufficient.

The plaintiff's *sixth* instruction was, substantially, in accordance with the law, and the Court erred in refusing to give it.

The *fourth* and *fifth* instructions moved by the defendant, are in accordance with law. To the *seventh*, the plaintiff made no objection.

The *sixth* instruction moved by the defendant, improperly assumes the fact that the words " *in liquidation* " were written under the signature of Stone & Williams when the note was executed—that they were part of the signature. Who wrote the words, and when they were written, appear not to have been shown to the jury otherwise than by indications upon the face of the note. Stone, the only witness who testified in the cause, stated that he did not know whose hand-writing they were in. When and by whom the words were put upon the note, as well as the inference to be drawn from them touching the question of notice to Walton & Sheafe of the dissolution of the partnership between Stone & Williams, were matters to be determined by the jury.

If the words " *in liquidation* " were written in the face of the note when it was made, and if, according to mercantile usage, they import a firm *dissolved*, it was a circumstance from which the jury might have inferred that Walton & Sheafe, when they took the note, had notice of the dissolution of the partnership of Stone & Williams.

The instruction should not have been given in the language in which it was drafted.

4. The next question presented by the instructions is, whether a part payment by one partner, after the dissolution of the firm, and before the debt is barred, forms a new point from which the statute begins to run as to the other partner.

It appears to be well settled that part payment by one partner, after the dissolution, and after the period of limitation has run out, does not revive the debt as to another partner. *Bill vs. Morrison et al.*, 1 *Pet. S. C. R.* 370; *Belote vs. Wynne*, 2 *Yerger* 534; *Bispham vs. Patterson et al.*, 2 *McLean* 90; *Sanders et al. vs. Lefavour et al.*, 2 *Blackf.* 371; 3 *Kent Com.* 55; 2 *Comstock* 532.

This Court has held that part payment of a debt by one joint contractor before the bar attaches, forms a new point from which the statute will begin to run as to another. *Trustees R.*

*E. Bank vs. Hartfield*, 5 *Ark*. 551; *Hicks et al. vs. Lusk et al.*, 19 *Ark*.

Where a note is executed by a firm, the members of the firm, after the partnership is dissolved, and before the debt is barred by the statute of limitations, most assuredly, as to such note, stand in the relation to each other of *joint debtors*, if not of partners.

If one partner, before the debt is barred, make a payment upon the debt, he is but discharging, *pro tanto*, a legal and subsisting obligation against all the members of the firm, though the partnership be dissolved; and has not only the right, but it is his duty to make payment.

We think, therefore, it is strictly in accordance with the previous decisions of this Court, to hold that a part payment of a debt, by one partner, after the dissolution of the firm, and before the debt is barred by the statute of limitations, forms a new point from which the statute begins to run as to another partner.

It follows that the Court erred in giving the *third* instruction moved for the defendant.

5. What constitutes such part payment as will revive a debt barred by limitation, or form a new point from which the statute will begin to run, has been well settled by the decisions of this Court. *Trustees R. E. Bank vs. Hartfield et al.*, 5 *Ark*. 555, *Alston vs. State Bank*, 4 *Eng*. 459; *Wood vs. Wylds*, 6 *Ib*. 756; *State Bank vs. Woody et al.*, 5 *Ib*. 640; *Brown vs. Hutchings*, 14 *Ark*. 85; *Armistead vs. Brooke*, 18 *Ib*. 522.

A part payment is treated as an admission of the continued existence of the debt, and an implied promise to pay the balance. But such promise is not to be implied where the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt, and his obligation to pay any balance.

A part payment by one joint debtor, made under circumstances which would not revive the debt as to him, is not to be

treated as an admission of liability on the part of another joint debtor. 2 *Greenleaf Ev., sec.* 444.

The Court erred in giving the first instruction moved for the defendant. The part payment, as we have seen, is of itself an admission of the existence of the debt, and an implied promise to pay the balance, unless accompanying circumstances or declarations negative the admission.

The *second* and *eighth* instructions are substantially correct.

For the errors in the Court below in refusing the *sixth* instruction moved by the plaintiff, and in giving the *first*, *third* and *sixth* instructions asked for the defendant, the judgment is reversed, etc.