## SANDERS *v.* McCLINTOCK.

### Opinion delivered December 5, 1927.

1. COURTS—TIME AND PLACE OF HOLDING COURTS.—It is within the power of the Legislature to prescribe the time and place of holding courts, and to authorize courts to be in session at all times for certain purposes.

2. EQUITY—POWER TO SET ASIDE DECREE.—Under Acts 1925, p. 250, providing that chancery courts in certain counties should always be open for the transaction of business and to hear causes and render decrees in said counties at any time, *held* that, where the term of the chancery court in a certain district of a county continued from the first Monday in May until the first Monday in November, such court had the power in July to set aside a decree rendered in the previous month of May.

3. LIMITATION OF ACTIONS—PART PAYMENT.—Though part payment is an admission of the continued existence of a debt and an implied promise to pay the balance, such promise is not implied where payment is accompanied by circumstances or declarations of the debtor showing that it was not his intention to admit by the payment the continued existence of the debt and his obligation to pay the balance.

4. SET-OFF AND COUNTERCLAIM—EFFECT AS PART PAYMENT.—Before a cross-demand or set-off can constitute a payment, it is indispensable that an agreement to that effect shall be proved.

5. WITNESSES—SUIT AGAINST EXECUTRIX.—Testimony of defendant as to an agreement with one since deceased cannot be considered in an action against defendant by the executrix of the estate of such deceased.

6. LIMITATION OF ACTIONS—PART PAYMENT.—Evidence *held* to sustain a finding that defendant's consent to the crediting of amount owed by the payee of a note to defendant on such note which defendant had executed did not constitute an acknowledgment of the debt sufficient to form a basis of new promise, tolling the statute of limitations on the note.

Appeal from Prairie Chancery Court, Southern District; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellants brought this suit in equity against appellees to foreclose a mortgage on real estate given to secure the payment of a note for $2,500. On the 14th day of May, 1925, a decree was entered of record in the chancery court in favor of appellants against appellees. On July

13, 1925, the chancery court set aside its decree rendered in May and allowed appellees to file an answer pleading the statute of limitations and payment of the mortgage indebtedness.

Upon the part of appellants, evidence was introduced tending to show that the note had not been paid, and upon the part of appellees evidence was introduced tending to show that it had been paid; but the conclusions we have reached will render it unnecessary to abstract this evidence.

Appellants introduced in evidence a promissory note dated November 18, 1916, for $2,500, payable to the order of R. H. Sanders on or before one year from that date, and signed by J. M. McClintock. On the back of it was indorsed the following: "January 24, 1924, by cash $200, and interest on the above, $96." R. H. Sanders, the mortgagee, was a member of the firm of Sanders & Frolich during the time of all the transactions in question.

Morrow was the principal witness for appellants. He attached as an exhibit to his testimony a receipt which reads as follows:

"R. H. Sanders        Jacob Frolich
          Sanders & Frolich
    General Merchants and Cotton Buyers
      "DeValls Bluff, Ark., January 24, 1924.

"Received from R. H. Sanders two hundred dollars, being the money put up with R. H. Sanders, solicited by Mr. Sheets, for the Prairie County Irrigation Company, which money has been credited on my note held by R. H. Sanders, this day.

"J. M. McClintock."

According to the testimony of Morrow, he wrote this receipt at the request of Captain McClintock. Two hundred dollars were given as a payment on the $2,500 note above referred to. The sum of $200 was money due by Sanders to McClintock on account of an irrigation transaction. McClintock had come in and asked for the payment of the two hundred dollars, and Sanders said that he thought that it should be credited on the note in ques-

tion. When the note was presented to Captain McClintock, it dumfounded him, and he said that he did not recollect such a note. He asked Sanders why he had not presented it to him before. Sanders replied that he had talked with him about it before. Captain McClintock stated that he did not know anything about what the note was for, but that it was his signature, and he must have given it. Captain McClintock wanted the receipt so that he would have something to show Mr. Sheets about the irrigation transaction. Before the suit was brought, Morrow asked Captain McClintock about the payment of the note. He was asked if, before the suit was brought, Captain McClintock gave him any satisfaction about when he was going to pay it, and his answer was, "He told me each time that he would have to look it up."

J. M. McClintock was a witness for himself. He was eighty-seven years old at the time he gave his testimony. He and R. H. Sanders had been directors in a bank that had failed at DeValls Bluff, and, in connection with other directors, had undertaken to pay off the indebtedness of the bank in order to prevent suits against themselves on account of their liability as directors to the creditors of the bank. McClintock was the cousin of the wife of R. H. Sanders, and he and Sanders were the best of friends, and had many transactions about the matters of liquidating the indebtedness of the failing bank as well as about other transactions. R. H. Sanders died on the 26th day of November, 1924, and under his will his wife was the beneficiary of his estate, and became executrix of it. She brought this suit as such executrix. According to the testimony of McClintock, he was never more surprised in his life than when the note in question was presented to him by Sanders and Morrow. The substantial effect of his testimony is that he never recognized it as an existing indebtedness, but was so dumfounded at seeing his signature to the note that he merely acquiesced in Sanders' crediting on the note the $200 which Sanders owed McClintock on account of the irrigation matter.

The chancellor made a specific finding that the note was barred by the statute of limitations, and from a decree rendered in favor of appellees, appellants have prosecuted an appeal to this court.

*Cooper* and *John D. Thweatt*, for appellant.

*Trimble & Trimble,* for appellee.

HART, C. J., (after stating the facts). The first contention of appellants is that the court was without power to set aside the decree of foreclosure which it had rendered in favor of appellants against appellees on the 14th day of May, 1925. They contend that the term of court had expired by operation of law when the decree was set aside on the 13th day of July, 1925, and that the court had lost control of it, except for the causes mentioned in § 6290 of Crawford & Moses' Digest, giving courts power, after the expiration of the term, to vacate or modify their judgments for certain specified causes. It is the contention of appellees that the term of court had not ended by operation of law in July, 1925, when the decree of May, 1925, was set aside, and the chancellor evidently acted on this theory, because he set aside the decree on his own motion and not for any of the grounds mentioned for setting aside decrees after the expiration of the term.

The correctness of the ruling of the chancery court depends upon the construction to be given to the act creating the First Chancery District, when considered in connection with the subsequent statute enacted for the purpose of expediting the business in the chancery courts of the First Chancery District.

The Legislature of 1923 passed an act that the First Chancery District should thereafter be composed of Pulaski, White, Lonoke and Prairie counties. Under the terms of the act the chancery court was to be held in Lonoke County on the third Monday in May and November; in White County, on the second Monday in June and December, and for the Southern District of Prairie County on the first Monday in May and November. Acts of 1923, p. 271. The Legislature of 1925, for the purpose

of expediting the business in the chancery courts of the aforesaid counties, provided that the chancery courts of said counties "shall always be open for the transaction of business, and may hear cases and render decrees in said counties at any time." Acts of 1925, p. 250.

Before the passage of the act of 1925, the term of a chancery court in the Southern District of Prairie County, where the decree in question was rendered, began on the first Monday in May and November. The decree was rendered at the May term, 1925. Before the act of 1925, the May term would have ended by the adjournment of the chancery court by the chancellor, or by operation of law when court was begun in Lonoke County on the third Monday in May, 1925. Both the above acts must be construed together, and, when so construed, we are of the opinion that the chancery courts of this chancery district still have terms. This court has held that it was within the power of the Legislature to prescribe the time and place of holding courts and to authorize courts to be in session at all times for certain purposes. *Wilmot Rd. Imp. Dist.* v. *De Yampert,* 159 Ark. 298, 251 S. W. 880, and *Miller* v. *Tatum,* 170 Ark. 152, 279 S. W. 1002. It necessarily follows that, if the Legislature had the power to provide for courts to be kept open for certain purposes, it might also provide that they be kept open at all times for all matters within the jurisdiction of such courts. We are of the opinion that, when both acts are construed together, the act of 1925 did not abolish the terms of court, but it did change the duration of the terms. The chancellor could no longer adjourn court for the term, and the term did not end by operation of law when the time for holding court in another county in the chancery district arrived. Under the act of 1923, as amended by the act of 1925, the term of the chancery court in each county in the chancery district continued until the arrival of the day designated by the statute for the beginning of another term of the same court for the same county. The evident purpose of the act was to continue the term of court in each county from the be-

ginning of the term until the opening of the next term in the same county. This would enable the chancellor to hold court at any time in the county when he was not engaged in like service in another county in the chancery district, and we are of the opinion that the term of the chancery court of the Southern District of Prairie County continued from the first Monday in May until it ended by operation of law at the beginning of the succeeding term on the first Monday in November. During the entire term the court had plenary power over its decrees, and might vacate, set aside, modify, and annul them. Hence the chancellor had the power to set aside the decree rendered in May in the succeeding July.

The court held that appellants were barred of maintaining this action by the statute of limitations, and counsel for appellants insist that this was error under the ruling in the case of *Gorman* v. *Pettus,* 72 Ark. 76, 77 S. W. 907. In that case the evidence showed that Cook had borrowed a sum of money from Rolfe, which was paid him through Pettus & Buford. A part of the money so borrowed was applied to the payment of a prior incumbrance on land that Cook mortgaged to Rolfe to secure the loan. One hundred dollars of the borrowed money were applied to the credit of an account which Cook owed Pettus & Buford, and which was barred by the statute of limitations. The remainder of the borrowed money was paid Cook. The bookkeeper of Pettus & Buford gave Cook a statement showing the disposition of the money. This statement showed that $100 had been applied in part payment of the account sued on. There was other evidence to show that Cook, within four or five months of his death, admitted that he was indebted to the plaintiff. This court held that the evidence was sufficient to support the finding of the circuit court that the $100 was appropriated and paid on the account of and with the knowledge and consent of Cook, and that the circuit court was justified in finding that there was a part payment by Cook and a promise to pay the balance due.

The reason is that part payment is treated as an admission of the continued existence of the debt and an implied promise to pay the balance. It is equally well settled, however, that such promise is not to be implied where the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt, and his obligation to pay the balance. *Burr* v. *Williams,* 20 Ark. 171; *Chase* v. *Carney,* 60 Ark. 491, 31 S. W. 43; and *Cox* v. *Phelps,* 65 Ark. 1, 45 S. W. 990.

In this connection it may be stated that the part payment in the present case was a debt which Sanders owed McClintock, and which he wished to set-off against the note which he claimed McClintock owed him. This court has held that, before a cross demand or set-off can constitute a payment, it is indispensable that an agreement to that effect shall be proved. *Parker* v. *Carter,* 91 Ark. 162, 120 S. W. 836, 134 Am. St. Rep. 60. It may also be stated here that, under the holding in *Blackburn* v. *Thompson,* 127 Ark. 438, 193 S. W. 74, we cannot consider the testimony of McClintock on this point, because the suit was brought by the executrix of the estate of R. H. Sanders, deceased.

We are of the opinion, however, that, in the application of the principles of law above announced, the chancellor was justified in holding that McClintock did not admit by payment the continued existence of the debt and did not obligate himself to pay the balance. It is not enough to prove an admission of indebtedness, if it is accompanied by circumstances which repel such inference, or even leave it in doubt whether the party intended to revive the cause of action. Morrow testified that Sanders and McClintock were the best of friends, and had had mutual transactions relative to the settlement of the affairs of an insolvent bank of which they were both directors. McClintock appeared to be dumfounded when Sanders asked him to credit the $200 which he, Sanders, owed McClintock, on a note for $2,500 which San-

ders claimed McClintock owed him. McClintock, when he was shown the note, admitted the signature to be his own, but he seemed to have no recollection about the matter, and his whole attitude was one of doubt. The chancellor was justified, under the circumstances, in holding that he only agreed to the credit being placed upon the note because of his confidence in Sanders. This view is strengthened by the fact that, when Morrow asked McClintock afterwards about the payment of the note, McClintock said that he would have to look the matter up. McClintock was a very old man, and had gone in there in the beginning to collect $200 which Sanders owed him, and, under the circumstances, we do not attach any importance whatever to the receipt which has been introduced in evidence. Morrow admits that McClintock asked for the receipt in order to have something to show Sheets, if he should ever ask him about the matter. The whole attitude of McClintock was one of doubt and perplexity about the matter. The chancellor was justified in holding that his consent to the credit on the note afforded no just ground to infer his intention to renew the promise of its payment. In this connection it may be stated that the note showed on its face that it was barred by the statute of limitations, and, although it had been due for several years, no attempt seems to have been made to collect it until McClintock presented his demand for the payment of the $200 which Sanders owed him. Hence we are of the opinion that the chancellor was justified in finding that the evidence offered by appellants in the present case falls short of proving an acknowledgment of the debt sued on sufficient to form the basis of a new promise.

It follows that the decree must be affirmed.