Buss *v.* Cooley.

4-6912

167 S. W. 2d 867

Opinion delivered December 21, 1942.

*Eugene Sloan,* for appellant.

*Archer Wheatley* and *Arthur L. Adams,* for appellee.

GRIFFIN SMITH, C. J. March 9, 1923, H. M. Cooley's note for $3,000, due two years after date, was executed in favor of William Buss. The last of three credits was March 14, 1929. As security Cooley mortgaged his fourth interest in 520 acres. Appellants are heirs of William Buss. Balance due on the note, with interest, was $5,760 as of March 9, 1936. Suit was filed May 13, 1936. No marginal indorsements of payments were made on the recorder's books. Pope's Digest, §§ 9436-9465. Bob Oliver was made a defendant because he claimed to own 360 acres.[1]

When appellants' suit was filed, Oliver was in possession of the two tracts he contends for.

May 30, 1931, Cooley wrote W. E. Buss in Colorado that the property was liable for delinquent betterment assessments in St. Francis Levee District, Drainage District No. 7 of Poinsett county, Road Improvement District No. 1 of Poinsett county, and for state and county taxes. As to the tract containing 160 acres, Cooley stated that public obligations amounted to more than $4,000. Bob Oliver, he said, had purchased tax titles. There was the statement that "as to the other lands, we have not been able to find a way to pay the taxes, . . . and will have to wait. . . ."

Buss acknowledged this letter on June 6, as shown in the footnote.[2]

An agreement was made between Cooley and those owning the remaining three-fourths interest in the 160 acres whereby Oliver should purchase for $2,400, evi-

---

[1] Oliver's asserted title is to separate tracts, the first described as northwest quarter of section thirteen, township twelve north, range four east (160 acres) ; the second tract is identified as southeast quarter of section fourteen and southeast quarter of the southwest quarter of section fourteen, township twelve north, range two east (200 acres).

[2] "Your letter of May 30th at hand and note what you say relative to the taxes and the sale of this property on which the estate holds a mortgage."

denced by note. Cooley's part was $600. June 10, 1931, Cooley wrote Buss, ". . . enclosing . . . assignment of all my interest in the Bob Oliver contract, which, when paid, is to be credited on my note." [3] The instrument was not recorded.

Cooley contended there had been an agreement whereby the Buss estate would accept deed to his fourth interest in the 520 acres. His pleas were (1) the five-year statute of limitation, and (2) accord and satisfaction.

In an amended answer Oliver alleged that ". . . because the complaint, on page two, stated specifically that he was joined because of his interest in the 160 acres, he did not understand it was also sought to foreclose on the southeast quarter of section fourteen and the southeast quarter of the southwest quarter of section fourteen," etc. It was then alleged by Oliver that "on or about" December 15, 1936, he procured a deed from the state. He also held deed from St. Francis Levee District, and Road Improvement District No. 1 of Poinsett county. Other improvement district deeds were alleged.

It is conceded by appellants that as to the land in section thirteen appellants' lien has been lost.

The decree contained a finding that no indorsement of payments on the mortgage record had been made, and ". . . as to Bob Oliver and the land in which he is interested [inclusive of the tract of 160 acres in section thirteen and the 200 acres in section fourteen] said mortgage has been barred by the statute of limitation."

There was a finding that no payments were made on the contract assigned by Cooley to Buss; that ". . . by said assignment . . . Cooley did not toll the statute of limitations," and that the plea of limitation should be sustained.

Oliver's right to the two tracts is secure insofar as this record discloses. It is argued that the tax titles relied

---

[3] The so-called assignment recited that ". . . I have hereby granted, sold, transferred and assigned, and do by these presents grant, sell, transfer, and assign unto W. E. Buss all my right, title, and interest [pertaining to the contract]. This assignment shall also cover all rights arising out of said contract [as enumerated], together with interest thereon, said amounts to be credited on the indebtedness due by the said H. M. Cooley to the said W. E. Buss, administrator."

upon were acquired after suit was brought. But (in respect of the 200-acre tract) as between the Buss estate, Oliver, and Cooley, Oliver was a third party and was not precluded, because of any trust relationship, from acting in his own behalf. He testified that he did not know of the Cooley mortgage until suit was filed. Therefore, as to him, it was unrecorded. *Hamburg Bank* v. *Zimmerman, et al.*, 196 Ark. 849, 120 S. W. 2d 380; *Johnson* v. *Lowman,* 193 Ark. 8, 97 S. W. 2d 86.

The court erred in holding that Cooley's note was barred. In his letter transmitting the assignment there was the statement that the interest, when paid, was to be credited on "my note." The assignment proper contained a direction that proceeds of the Oliver obligation (the assignment) were to be credited ". . . on the indebtedness due by the said H. M. Cooley to the said W. E. Buss, administrator."

The letter recognized that the credit was not to be made until there had been payment. The amount was to be applied *on* the note, not in satisfaction of it. But, if it should be argued that the letter failed to specify *what* note was referred to, or if in some other respect there was ambiguity, doubt is dissipated through the expression that, when Oliver settled, then the amount he paid should apply *on* the indebtedness due by Cooley to the administrator.

We are cited to *Chase* v. *Carney,* 60 Ark. 491, 31 S. W. 43, and the rule announced in *Burr* v. *Williams,* 20 Ark. 171, is invoked. In the Burr-Williams case it was said that a promise to pay is not to be implied ". . . when the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt, and his obligation to pay the balance."

Counsel for Cooley correctly states the law to be that an acknowledgment with a conditional promise to pay is of no avail to toll the statute unless the condition is complied with or the event on which the promise depends materializes. But *Sanders* v. *McClintock,* 175 Ark. 633, 300 S. W. 408, relied on by Cooley, is not helpful

here. The syllabus as quoted is not complete. Inadvertently omitted are the words, "Evidence *held* to sustain a finding. . . ." The question, therefore, related to sufficiency of the evidence, and not to a matter of abstract law.

A paragraph in the opinion, as distinguished from the headnote referred to, holds that ". . . part payment is treated as an admission of the continued existence of the debt and an implied promise to pay the balance. It is equally well settled, however, that such promise is not to be implied where the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt, and his obligation to pay the balance."

Cases pertinent to the issue here presented are collected in *Street Improvement District No. 113 of Hot Springs* v. *Mooney,* 203 Ark. 745, 158 S. W. 2d 661. The second syllabus, prepared by the writer of the opinion, is:

"In determining whether there has been a sufficient acknowledgment in writing to toll the statute of limitation, the question to be determined is the intention of the debtor. It is generally held to be sufficient if, by fair construction, the writing constitutes an admission that the claim is a subsisting debt, and if the acknowledgment is unaccompanied by any circumstances repelling a presumption that the party intended to pay."

Applying this rule to the instant case, how can it be said that the assignment repelled a presumption that Cooley intended to pay? He expressly mentioned "an indebtedness due" and says it is his indebtedness to the administrator.

Cooley's failure to pay was not by design. The record shows that he, like many other substantial citizens, was a victim of bank failures. In the transaction directly affecting his financial status, Cooley indorsed bank paper. It "kicked back," with disastrous results. His integrity is in no sense involved.

The consequences, however, are matters over which we have no control. There are indications that the Buss interests showed a want of diligence in standing by for several years while the mortgaged property was being sold for taxes and assessments. Still, they were not in possession, and primary obligations rested upon the mortgagor.

The decree is affirmed as to Oliver, but reversed as to Cooley.

SMITH and HOLT, JJ., dissent.