BERKLEY v. RICE.

4-9370                                    236 S. W. 2d 714

Opinion delivered February 26, 1951.

430

*John J. Cravens,* for appellant.

*David L. Ford* and *Mark E. Woolsey,* for appellee.

GRIFFIN SMITH, Chief Justice. The controlling issue is whether the indorsement on a note showing, *prima facie,* that $100 had been paid, tolled the statute of limitation, thus entitling the holder to a lien on certain lands for the purchase price. It was stipulated that unless the note were barred the realty should be charged with the obligation.

A. E. Rice, plaintiff below and appellee here, was a brother of Mrs. Lydia Berkley, who died in November, 1948. Appellee and other heirs of their father and mother, W. E. and S. E. Rice, sold to Mrs. Berkley about 215 acres they had inherited. The deed was executed in 1920. Appellee accepted his sister's note for $1,333.33. Some payments were made and there were renewals, the last for $1,808.23, dated November 1, 1936, and due eleven months later. Payment of $6.40 by check is shown as of July 6, 1937. The next indorsement is "Nov. 14, 1947, by cash $100."

On January 12th, 1948, Mrs. Berkley deeded the property to her two children: James W. Almond and Venia Shelby. Appellee brought suit while his sister was living, but she died without filing an answer. The cause was prosecuted as an action in *rem* and resulted in a decree fixing a lien on 109 acres claimed by James Almond under his mother's deed. Mrs. Shelby settled with appellee, procuring a release and dismissal. Her title to 106 acres is not questioned. Almond and his wife have appealed from a decree that with interest $2,885.63 was due on the note, and from an order directing sale of the property to satisfy the judgment.

Neither of the appellants nor any of their witnesses had personal knowledge of any directions given by Mrs. Berkley concerning the $100 payment. Appellee had not questioned his sister's right of possession throughout the years, but testified that his sister had frequently told him the land was to stand good for the debt. Appellee moved onto the farm in 1945 with Mrs. Berkley's permission, remaining about sixteen months. The roof of the house was in bad shape and was replaced by appellee at a cost of $125 exclusive of his own labor. Relations with Mrs. Berkley were such that he assumed the improvement so made would balance fair rentals, but nothing was said by either concerning this item. Mrs. Berkley paid taxes for two years, taking receipts in appellee's name. The receipt for 1946 was mailed to appellee by his sister who in a letter said that she had been to Ozark [on "Wednesday the 5th"] where taxes were paid, "and I will send you the receipt." Admissibility of this testimony was questioned on the ground that the letter did not show what year was referred to. On redirect examination appellee testified that the 1946 receipt came in an envelope postmarked 1947. The other receipt covered 1945 taxes.

When appellee moved from the farm and returned to Charleston he left some of his personal belongings. Shortly thereafter Mrs. Berkley came to appellee with Harley Owens "and wanted me to rent him the place, . . . so I let him have the place [for a year for $100"]. On former occasions—before the note was renewed in 1936— Mrs. Berkley had permitted appellee to take such things as live stock, etc., and apply the value on the debt. When Owens paid the rent to appellee he applied it as a credit—"just like former transactions had been handled." In general, appellee's explanations were that Mrs. Berkley had always acknowledged the debt and contemplated that money or its equivalent coming into appellee's hands would be retained for credit purposes. There was no question in appellee's mind regarding Mrs. Berkley's intention that the rent payment was to be retained by him—and, as he expressed it, "that was all she owed me." With knowledge that the

rent had been paid and retained by appellee Mrs. Berkley did not ask for an accounting.

Appellants, in contesting the Chancellor's finding that the statute of limitation was tolled by the rent payment, cite our holding in *Buss* v. *Cooley,* 205 Ark. 42, 167 S. W. 2d 867. We there said that an admission of a barred debt may be inferred from a partial payment, but [a promise to pay] is not to be implied where the payment is accompanied by circumstances or declarations of the debtor showing it was not his intention to acknowledge the debt or to pay the balance. But in *Street Improvement District No. 113 of Hot Springs* v. *Mooney,* 203 Ark. 745, 158 S. W. 2d 661, it was held that parol proof is admissible to show that, as between debtor and creditor, but one obligation exists, "thus identifying the debt to which the promise related." In the Mooney case the court quoted with approval (p. 751) the statement from American and English Encyclopedia of Law that a mere acknowledgment of a claim as an existing obligation "is such an admission as the law will imply therefrom a new promise to pay, which will start the statute anew, when it is not accompanied by anything negativing the presumption of an intention to pay the debt."

Wood on Limitations, vol. 1 (4th Ed.), p. 344, says that where subsistence of a debt is acknowledged certain requisites are indispensable, the first being that the acknowledgment must be in terms sufficient to warrant the inference of a promise to pay, hence ". . . the theory upon which the courts proceed is that the old debt forms a good consideration for a new promise, either express or implied, and that any clear and unequivocal admission of the debt as an existing liability carries with it an implied promise to pay, unless such inference is rebutted either by the circumstances or the language used."

Although appellee's testimony will not be regarded as undisputed—he being an interested party—there is no affirmative evidence, other than implications that might arise from Mrs. Berkley's deed, contradicting the assertion that she repeatedly told appellee the property was to pay the debt. The attending circumstances not only

attest Mrs. Berkley's willingness that the rent money be retained by appellee, but imply a recognition of the old obligation. A fair inference is that in taking Owens to appellee and permitting the money to be paid to him, the debtor intended that the rent should apply on the old debt; therefore the Chancellor correctly sustained appellee's version of the transactions, and the decree must be affirmed. It is so ordered.