CHASE *v.* CARNEY.

Opinion delivered May 4, 1895.

1. *Limitation of action—Part payment.*

A part payment which will revive a debt barred by limitation, or form a new point from which the statute will begin to run, must be such as can be treated as an admission of the continued existence of the debt, and an implied promise to pay the balance. But no such promise can, as a general rule, be implied where the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt and his obligation to pay any balance.

2. *Estoppel—Conduct.*

Where a debtor by his conduct led his creditor to believe that a payment made by him to a stranger at the creditor's request

was intended as a payment on his debt, which would stop the running of the statute of limitations, and the creditor was thereby induced to act upon that belief, the debtor will be estopped to insist that the payment was not so intended.

Appeal from Marion Circuit Court..

B. F. FEE, Special Judge.

*Crump & Watkins* for appellant.

1. The evidence shows conclusively that the claim is barred by limitation. The payments made by Chase to Bearden were not intended as payments on the $200 claimed, and hence were not acknowledgements of the debt. Wood on Lim. p. 221; *Ib.* 225; 5 Ark. 551; 9 *id.* 455; 18 *id.* 521; 20 *id.* 171.

2. The court erred in refusing to admit as evidence the deposition of Stone and the written agreement referred to in his deposition. They strongly corroborated Chase on material matters in issue.

BATTLE, J. B. J. Carney instituted this action against G. W. Chase on the 8th day of February, 1893. He alleged that he loaned to Chase the sum of $200; that Chase returned to him, of this amount, $40 on the 27th of May, 1890, and the same amount on the 5th of July, 1890; and that there remains due and unpaid the sum of $146.90.

Chase denied that he was indebted to Carney in any sum whatever, and alleged that plaintiff's cause of action did not accrue three years before the bringing of this suit.

The issues in the case were tried by a jury. The evidence adduced at the trial, as stated in appellant's abstract, is as follows: "The appellee testified that, in September, 1889, he loaned to defendant, Chase, $200; that about July, 1889, he had contracted with W. C. Stone, through appellant, Chase, for the sale of some mining property in Marion county; that Chase was assisting him in making the sale, and also acting as the

agent of Stone; that he gave a written option to Stone for $2250, and that Stone paid him $100 down, which was to be credited on the amount of the option if the trade was consummated, and was to be forfeited if the trade was not completed; that the $2150 balance was to be paid at a certain time he agreed upon, which was after the adjournment of the August term of the Marion court; that the matter ran along for some time, when Mr. Stone came to Rush Creek, accepted the contract, and paid him the balance, ($2150), and that he gave him a quit-claim deed to the land; that there was no contest pending against said property, in the circuit court or elsewhere, when the trade was completed, and the money paid by Stone; that he agreed to allow Chase all over $2000 he could get for the property, and when he contracted it for $2250 Chase was to have $250. 'On the day Stone paid him, I told Chase I could pay him his commission. I had received a $500 check from Stone, and Chase asked me to loan the balance of that to him, promising to pay it back. I owed him $250, and I told him I would loan him the balance of the check. I gave him the $500 check—$250 to pay his commission, and the balance to be loaned. On the same day I told him that he had made a good trade, and I would allow him $50 more as commission, making in all $300 I allowed him as his commission. I saw him in the spring after this about paying me this $200 he had borrowed; that I wanted to pay it on a mining claim I had bought from one A. L. Jones. I had bought a claim from Jones, paid him $20 cash. On the same day, at my request, Chase paid to Mr. Jones, through N. J. Bearden, $40 on this $200 account. This was on May 27, 1890. On the 5th of July, 1890, he paid Mr. Jones through Bearden $40 additional on this claim for me. I was at Rush Creek on this day, and he had paid the $40 before I got there. I understood these payments were on the $200 loan. I went

to see Chase a number of times about this money. He would put me off with plausible excuses and fair promises. He never did say anything to me about receiving the $200 to be used on the Guthrie claim, or any other claim.'

"N. J. Bearden, introduced by appellee, testified that, on the 24th day of May, 1890, Chase paid him $40 for Carney, to be applied on the claim of A. L. Jones, who had sold Mr. Carney a mining claim. Mr. Chase at the time said he was only owing Carney $50, and that the $40 was to be paid to Mr. Jones for Carney. 'That, on the 5th day of July, 1890, Chase paid me $40 more for Carney, which was also to be paid to A. L. Jones. I was trustee for Jones and Carney in the deal, and Carney had paid $20 down when Chase paid me these two $40 amounts to satisfy Jones, and I then turned the deed over to Carney. Chase, when he made the last payment, claimed that he only owed Carney a balance of $10, and that he advanced the balance to keep Carney from losing this Jones claim. This was on the day when the last payment was due and to be paid. Carney was not present when payment was made.'

"Carney being recalled, testified that he was not present when Chase made the payment to Bearden.

"Appellant testified that in the spring of 1889 appellee requested him to sell a mine in Madison county; that he afterwards saw Stone, who wanted to buy mining property; that afterward appellant went to Marion county in July, 1889, and took an option on appellee's mining claim for Stone, and made an agreement that the balance of $2150 was to be paid at the close of the August term of the Marion circuit court, on condition that Carney got his contest with Carter Guthrie settled at that term of the court (the original option is attached to the deposition of W. C. Stone filed in this case); that Carney was also to furnish certain affidavits

of assessment work. When I came back to Marion county, at the August term, 1889, he asked me to get Stone to take the mining claim, as it was then, as he did not have the money to fight this contest with Guthrie, and had not done anything about getting the Guthrie dispute settled. The plaintiff was to give me $250 commission for making the sale, and was to give me $200 more if I would get Stone to take the mining claim as it was. I thought I could get the Guthrie matter settled with that amount of money, and when Mr. Stone came down, I advised him to take the claim, and told him we could get patents together, which Mr. Stone did. Mr. Stone paid the plaintiff on the claim the balance, $2150. Mr. Stone gave the plaintiff a check for $500; the plaintiff gave it to me, out of which I was to have $250 as commission and $200 to settle up the Guthrie claim on said mine, and was to return to the plaintiff $50 out of the check. I did not borrow any money from the plaintiff, and would have paid him the $50 back at the time, but I could not make the change. I had money in the bank at the time at Fayetteville. I afterwards paid Guthrie $125 cash, a suit of clothes worth $15, and three acres of land in payment of his claim on said mining claim. I paid Bearden $40 of the $50 in May, 1890, and told him that I only owed plaintiff $50, which left $10 that I still owed him. In July, 1890, Bearden came to me, and wanted $40 to pay for plaintiff to Mr. Jones on a mining claim that he said plaintiff had bought from Jones, and stated to me that the last day for the payment was up; that if the $40 was not paid, the plaintiff would lose the Jones land, and what he had already paid. I told Bearden I only owed the plaintiff $10, but I would loan the plaintiff $30, so as to save his claim. I made neither of these payments on any account he had against me."

The defendant offered to read the deposition of W. C. Stone to prove that he, as the agent of Stone, purchased the option of buying a certain mining claim from the plaintiff, and paid therefor $100, with the understanding that the purchase should be consummated, in the event he elected to do so, by the payment to Carney of $2150 at the adjournment of the term of the Marion circuit court held in August, 1889; and that the contract was evidenced by an instrument of writing in the following words and figures:

"Yellville, Ark. July 15, 1889.　Received of G. W. Chase, one hundred dollars ($100) as part payment for my mineral claim, known as the 'Ben Carney Claim', situated in section 10, township 17, range 15, and Buffalo mining district, on Rush creek, Marion county, Arkansas; the balance ($2150) to be paid on the adjournment of the next (August) term, of the circuit court, which convenes on the fourth Monday in August. And on condition that I am successful in my contest with Guthrie; and also, if not paid, the $100 is forfeited. (Signed) B. J. Carney."

He (Stone) further stated in the deposition that he paid the $2150 before Carney complied with his agreement, because Chase advised him to do so, and said that Carney would perform his contract.

The court refused to permit the deposition, or the original contract referred to therein, to be read as evidence.

The court instructed the jury as to the law of the case, and they returned a verdict in favor of the plaintiff for $146.90. Judgment was rendered for that amount against the defendant; and he, after filing a motion for a new trial and the overruling of the same, appealed.

Appellant insists that the judgment of the circuit court should be reversed (1) because the undisputed evidence in the case shows that the action was barred; and

(2) because the court erred in refusing to allow the deposition of W. C. Stone, and the contract referred to therein, to be read as evidence.

1. Appellee relied on the payments made by appellant to show that his action was not barred by the three years statute of limitation. Are they sufficient for that purpose?

A part payment which will revive a debt barred by limitation, or form a new point from which the statute will begin to run, must be such as can be treated "as an admission of the continued existence of the debt, and an implied promise to pay the balance." But no such promise can, as a general rule, be "implied where the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt, and his obligation to pay any balance. *Burr* v. *Williams*, 20 Ark. 189.

1. When part payment will revive debt.

To show that the part payments to appellee were not sufficient to form a new point from which the statute began to run, appellant refers to the testimony of himself and Bearden, in which they testified that both payments were made to Bearden, and that he (Chase) stated to Bearden, at the time he made the first, that he owed only $50, and, when he made the second, that he owed only $10, and that he advanced the remainder ($30) as a loan. But this was not all the testimony on this point. Carney testified that Chase, at his request, paid Bearden for him the first $40 in part payment of the $200 which he had loaned to him ; that this was on the 27th of May, 1890 ; that appellant paid to Bearden, on the 5th of July, 1890, $40 more for the same purpose ; that he understood that these payments were on the $200 loan, and knows that Chase so understood it ; that he had frequently seen Chase about the loans, the last time in February, 1893 ; that he put him (appellee) "off with

2. Estoppel by conduct.

plausible excuses and fair promises," and never denied the debt, or said anything about receiving the $200 "to be used on the Guthrie claim, or any other claim." If this testimony of Carney be true, the $80 were paid to Bearden in part payment of the $200; for he promised to pay that sum ($200); was not indebted to him on any other account; requested him to pay $40 on that account; he did pay it in compliance with that request; it was understood by him and Chase that the $80 were delivered to Bearden in part payment of the debt for $200; he had frequently asked Chase to pay the $200, the last time in February, 1893, long after the $80 were paid; and he never denied owing the debt. If he really owed the $200, and the testimony of Carney be true, he is estopped from saying that the $80 were not in part payment, and an admission, of the debt for $200. He could not, by fair promises and conduct, wilfully lead Carney to believe the $80 were in part payment, and to forbear suing for more than three years after the debt was due, but for a less time than three years after the last payment was made—could not wilfully induce Carney by such belief to forbear suing, and then, when the three years from the time the debt became due had expired, say that it was barred by the statute of limitation, when it was not, if the $80 were in part payment of it. If it were otherwise, he could practice a gross fraud upon Carney. It would be a reproach to the law if it permitted him to do so.

2. The court erred in refusing to permit the deposition of Stone, and the agreement in writing therein mentioned, to be read as evidence. They were admissible for the purpose of corroborating the testimony of Chase in an important particular, and of assisting the jury in determining the truth of the statement made by Chase and contradicted by Carney, and in arriving at a correct verdict.

Reversed and remanded for a new trial.