HAMBURG BANK v. GEORGE.

Opinion delivered December 6, 1909.

1. EVIDENCE—SELF-SERVING DECLARATIONS.—Where it was a question whether plaintiffs, who were partners, purchased certain county warrants for themselves or for another, evidence of conversations between the plaintiffs tending to prove that they were purchasing for themselves was inadmissible, as they were self-serving declarations. (Page 476.)

2. PLEDGE—CONVERSION—MEASURE OF DAMAGES.—While a pledgor is not entitled to recover the pledge until the debt for which it is pledged is paid, yet when the pledgee converts the pledge and thereby puts it beyond his power to return it, the pledgor is entitled to sue for the value of the pledge at the time of the conversion, less the amount of the debt. (Page 477.)

3. SAME.—It is error to instruct the jury that the measure of damages for conversion of a pledge is the highest price for which the pledge could have been sold at the time of the conversation. (Page 480.)

Appeal from Ashley Circuit Court; *Henry W. Wells*, Judge; reversed.

*Moore, Smith & Moore* and *W. L. & D. D. Terry,* for appellants; *J. C. Norman* and *Geo. W. Norman,* for appellants.

If appellees wished to recover the value of the scrip, the action should have been in tort, for the value thereof, and not for the value of the money received for it. 25 Ark. 100; 31 Ark. 159; 76 Ark. 600. What the scrip sold for does not necessarily show the market value. 38 Ark. 179. And evidence of that is not sufficient to support a verdict. 31 Ark. 158. A party cannot give evidence of his own declarations made in the absence of the other party. 147 Mass. 541; 5 Barb. 147; 63 Me. 22; 110 Mass. 144; 125 Mass. 451; 7 How. Pr. 113; 16 N. H. 426; 79 Ga. 105. A witness will not be permitted to state a conclusion of law. 70 Ark. 426. An instruction based partly on evidence not in the case is erroneous. 85 Ark. 325; 79 Ark. 377.

*Robt. E. Craig,* for appellees.

A party may waive a tort and sue in assumpsit, or he may declare in both and recover at his election what he can prove. 17 Ark. 599; 25 Ark. 100. The pleadings will be treated on

appeal as amended to conform to the proof. 84 Ark. 41; 85 Ark. 251. The evidence about which appellants complain was admissible as part of the *res gestae.* 14 Ark. 438. A pledgee does not become liable for conversion by the simple fact that he delivered the pledge to a person other than the pledgor. 93 U. S. 579. The test to determine whether plaintiff is entitled to recover is his ability to make out his case without the aid of an illegal transaction. 47 Ark. 378. The office of an amendment *nunc pro tunc* is to perfect that which is improperly done. 72 Ark. 21.

McCULLOCH, C. J. The plaintiffs (appellees), George & Butler, instituted this action at law against the Hamburg Bank, a banking corporation, and W. H. Tebbs, its cashier, to recover the value of a lot of county scrip of Ashley County, alleged to be the property of plaintiffs, and which the defendants are alleged to have converted and sold. Plaintiffs alleged in their complaint that they borrowed from defendant bank, through its cashier, the sum of $12,597.34 with which to purchase a lot of county scrip; that they purchased said scrip and delivered same on March 19, 1906, to the bank as security for the payment of said amount loaned to them, with interest thereon; that the bank and its said cashier, on October 30, 1906, sold said scrip or permitted it to be sold, without the consent of plaintiffs, and converted the proceeds. They prayed judgment for the price of the scrip less the amount of their said indebtedness to defendants, a balance of $4,911.03.

The defendants in their answer denied that they loaned money to plaintiffs with which to purchase scrip, or that the plaintiffs purchased same or delivered same to defendants as security; but alleged the facts concerning the scrip transaction to be as follows:

That G. P. George represented to one T. A. Jackson that he had an option, at the price of 45 cents on the dollar, on a lot of Ashley County scrip then owned by Caldwell & Drake, and that they (Jackson and George) entered into an agreement to the effect that George should go to Little Rock and purchase said scrip for Jackson and sell it to the latter at the price of fifty cents on the dollar; that Jackson would arrange with defendant bank to honor George's draft for the price of the

scrip; that pursuant to this agreement George purchased the scrip from Caldwell & Drake and forwarded a draft on defendant bank with the scrip attached for the price thereof, and that the bank paid the draft for and at the request of Jackson, and that the scrip was delivered to the bank for Jackson. They alleged that another lot of scrip was purchased by plaintiffs for Jackson in the same manner, and that the only connection either the bank or its cashier ever had with the scrip transaction was to pay the drafts at Jackson's request drawn for the price of the scrip. They alleged that Jackson immediately took charge of the scrip, and afterwards sold it. The case went to trial before a jury, and verdict was rendered in favor of the plaintiffs for the sum of $2,650.

There was a sharp conflict between the testimony of plaintiff George and defendant Tebbs, the cashier of the bank, between whom the transactions in question were negotiated. The former testified positively that he borrowed the money from the bank to purchase the scrip for his firm, George & Butler, and delivered it to the bank as security for the loan. Defendant Tebbs testified that he advanced the money to plaintiff on instructions from Jackson, that the scrip was delivered to the bank for Jackson attached to the draft, and that Jackson gave his note to the bank for the amount advanced. He said George told him that the scrip was being purchased for Jackson. The evidence was sufficient to sustain a verdict either way on the issues presented.

Errors of the court are assigned in permitting the plaintiffs, George & Butler, each to testify concerning conversations between themselves in the absence of defendants about their own acts and declarations leading up to the purchase of the scrip. George was permitted to testify as follows:

"When I went into the office, Butler handed me this telegram, of date March 14, 1906. It was in words and figures as follows (reading it). Mr. Butler discussed the proposition of who should go to Little Rock. It was decided that I should go. The proposition of funds was brought up. We had been in communication with the Mercantile Trust Company of Little Rock. We thought we could get the money by putting up the scrip and probably two or three thousand acres of land in Ashley

County. I told Mr. Butler to make out a list of our lands and forward it to me at Little Rock."

. . Butler was permitted, over the objections of defendants, to testify as follows: "We conceived the idea of locating or securing the Caldwell & Drake scrip—that was scrip issued for the building of this court house. We had correspondence with them from time to time. I don't know how many weeks or months. There was several letters passed between us. Mr. George went to Little Rock to negotiate about it. During this time we were figuring on where we were going to get the money to pay for this scrip. We had written to the Mercantile Trust Company and other banking institutions to see if we could raise the money. One of the banks wrote us. We wanted to borrow the money at 6 per cent. and give the scrip we purchased as security. We were satisfied we could get it if we had the right kind of security. Some time in March our negotiations with Caldwell & Drake culminated by them sending us a telegram to come to Little Rock. I believe it was George Caldwell who was business manager. He sent for us to come to Little Rock and make a deal about that Ashley County scrip. George was not in the office when the telegram came. It was in the morning before the train left. I 'phoned to George to come to the office at once. We discussed the matter, and decided that he should go to Little Rock, inasmuch as he had gone there before, and see if he could close the trade. Fifty cents was the limit we could offer to pay for the scrip. We had something over $3,000 in scrip before that. We had disposed of $2,000 of that to Mr. Gates and $1,000 to Mr. Compere. We got everything in shape to make possible this deal. We wanted to raise the money for this big batch of scrip. We had our abstract books, which we expected to put up in addition. I was to make out a list of the lands, the abstract books and the value of the lands. I was to send that up, so that he could present that to the bank to secure the money. After we made that agreement, he left to go to the Hamburg Bank, with whom we were doing business, to draw on our account to go to Little Rock. He was gone a few minutes, and came back with a letter from the Hamburg Bank. It said to honor George's draft for as much as $14,000. George left for Little Rock. He was gone a day

or two and came back, and said that the scrip had been landed."

The tendency of this testimony was to corroborate the testimony of George in his statement that he borrowed the money from the bank with which to purchase the scrip on their own account, instead of purchasing it for Jackson, as claimed by Tebbs. It was improper to corroborate him in this way. These were self-serving acts and declarations of the plaintiffs, which were not competent evidence against the defendants. Their prejudicial effect is manifest, for the conflict between the several versions of George and Tebbs was a sharp one, and the slightest corroboration was calculated to turn the scales in favor of either. A party cannot be permitted to corroborate himself by proving what he said or did at another time. *Res inter alios acta alteros nocere non debet* as a maxim of the law of evidence is universally recognized. Mr. Chamberlayne, in his note to Best on Evidence (§ 506), discussing this rule, says that "when the person whose words or acts are offered in evidence is also the opposite party to the suit, the evidence is further inadmissible by virtue of another important principle—that no man shall be allowed to make evidence for himself."

The following authorities may be consulted as establishing the inadmissibility of the testimony in question: 17 Cyc. 274, 279, 283; 1 Phillips on Evidence, 748; *Carrigg* v. *Oaks,* 110 Mass. 144; *Commonwealth* v. *Sargent,* 129 Mass. 115; *Builders' Supply Co.* v. *Cox,* 36 Atl. (Conn.) 797; *Baxter* v. *Camp,* 41 Atl. (Conn.) 803; *Aiken* v. *Kennison,* 58 Vt. 665; *Erie & Pac. Despatch* v. *Cecil,* 112 Ill. 180; *Swamscot Machine Co.* v *Walker,* 22 N. H. 457; *Williams* v. *Emberson,* 55 S. W. (Tex.) 596; *Ross* v. *Moskowitz,* 95 S. W. (Tex.) 86.

The admissibility of the testimony cannot be sustained on the ground contended for by learned counsel for plaintiffs, that it related to acts and declarations which constituted a part of the transaction involved in the controversy. It was not a part of the transaction in controversy, which was a contract entered into between George, on the one side and Tebbs, the cashier of the bank, on the other. The testimony related solely to acts and declarations of the plaintiffs themselves concerning the purchase of the scrip before the transaction between George and Tebbs occurred. It did not tend to establish any independent

or collateral fact which legitimately shed light on the main transaction in controversy, but it related solely to the preparations made by plaintiffs for the purchase of the scrip, and it was in effect an attempt to corroborate George by proof of acts and declarations of himself and his co-plaintiff in the absence of defendants. As we have already stated, the conflict in the testimony of George and Tebbs was a sharp one. The former stated that he borrowed the money from the bank, purchased the scrip, and delivered it to the bank as security. Tebbs denied this, and stated that he advanced the money to plaintiffs to use in purchasing the scrip for Jackson. The prejudicial effect of the objectionable testimony is manifest, for, if credited by the jury, it induced them to believe that plaintiffs intended to borrow the money from the bank and purchase the scrip for their own account; and it thus improperly went in corroboration of George's testimony as to the main transaction.

There are numerous other assignments of error, which we do not sustain, but, as the case must be remanded for the error indicated, we deem it proper to discuss some of the other important questions which will probably arise in the new trial.

Learned counsel for defendants insist that this is not a suit for the conversion of the scrip, but only for money had and received, and that, as the scrip was turned over to Jackson and sold by him, and none of the proceeds were received by either of the defendants, the evidence does not sustain a verdict against them. We think counsel are mistaken in their characterization of the action. It is one for conversion. The allegations of the complaint are sufficient to show a conversion of the scrip by defendants and to warrant a judgment for the recovery of the value thereof. *Fordyce* v. *Nix,* 58 Ark. 136. The case was tried on the theory that it was an action sounding in tort for the conversion of the scrip, and the instructions submitted the case to the jury on that theory, and we think there was ample evidence to sustain the verdict.

The letter signed by Tebbs, addressed to the State National Bank of Little Rock, and delivered to George, instructing that bank to cash George's draft for the money with which to buy the scrip—or a copy of that letter on proof of the loss of the original—was admissible. The language of the letter is con-

sistent with the respective versions of both George and Tebbs as to what transpired between them, and it was admissible as a part of the transaction between them. George's testimony as to what was said at the time the letter was written is sufficient to establish a contract with the bank to loan the money, and his statements were competent for that purpose.

The following instructions, given at the request of plaintiff, were objected to:

"1. If you believe from the evidence that plaintiffs borrowed from the Hamburg Bank the money to pay for the scrip in question and deposited the scrip so bought with the bank as security for the money borrowed, then this scrip was the absolute property of the plaintiffs, subject to the lien of the bank on the scrip for payment of the money borrowed; and if you further believe from the evidence that the bank delivered the scrip to T. A. Jackson or permitted him to take it and sell it as his own, then the bank cannot defeat this suit for the value of the scrip by claiming that it lent the money to Jackson, and Jackson paid the bank the money borrowed, and Jackson sold the scrip, but such action on the part of the bank would be a legal conversion of the scrip, and the bank is liable to plaintiffs for the value of the scrip."

"2. If you believe from the evidence that plaintiffs borrowed the money from the Hamburg Bank to pay for the scrip in question, and pledged or hypothecated the scrip to the bank to secure payment of the money borrowed, then the scrip so pledged was the absolute property of the plaintiffs, subject to the payment of the debt, and the bank is bound to account to the plaintiffs for it, regardless of any claim of Jackson or any one else may have made to the ownership of the scrip; and if the bank without plaintiff's consent let Jackson have it and sell it as his own, then the bank is liable to the plaintiffs for the value of the scrip."

It is contended that these two instructions are erroneous in declaring as a matter of law that if the plaintiffs borrowed the money to pay for the scrip, and deposited the scrip so bought with the bank as security for the money borrowed, it constituted the plaintiffs the owners of the scrip. We think the instructions were correct; for, if the plaintiffs borrowed the money from

the bank and purchased the scrip, it thereby became their property; and if they pledged it to the bank as security for the loan, the bank was responsible to them for it. Of course, these instructions must be considered in connection with other instructions given at the request of the defendants, presenting their theory of the case; notably the following:

"1. You are instructed that if you believe from the evidence that G. P. George, one of the plaintiffs in this case, agreed to sell T. A. Jackson the county scrip mentioned in the controversy for the sum and price of fifty (50) cents on the dollar, and if you believe in furtherance of said agreement that said George went to the city of Little Rock and procured said scrip, and drew a check therefor at said price on the Hamburg Bank and that the Hamburg Bank in obedience to the orders of T. A. Jackson paid said draft, and had said check charged to himself, then your verdict will be for the defendants."

"2. You are instructed that if you believe from the evidence that G. P. George, one of the plaintiffs in this case, agreed to sell Jackson the scrip mentioned in this controversy for fifty (50) cents on the dollar, and Jackson did pay for it, and that after scrip had been purchased and paid for by Jackson that Jackson agreed to permit said George to become a part owner in the said scrip, upon the said George depositing with him or the Hamburg Bank a certain amount of money, and that George failed to deposit said sum of money, then your verdict will be for the defendants."

The following instruction, given at plaintiff's request, was also objected to: "If the jury believe from the evidence that plaintiffs borrowed money from the Hamburg Bank to pay for the scrip in question, and deposited the scrip so bought with the bank as security for the loan of the money, and afterwards plaintiffs demanded of the bank a settlement, and the bank denied that plaintiffs had deposited any scrip or had any interest in the scrip, then this was a conversion on the part of the bank, and it became then and there liable to the plaintiffs for the value of the scrip."

The language of the instruction was inaccurate in the use of the word "settlement," instead of saying a "return of the

scrip." But this inaccuracy, if deemed material, should have been met with a specific objection.

The plaintiffs were not, as long as the scrip was held by the bank as a pledge, entitled to its value until they paid the debt; but when the defendants converted the scrip and thereby put it beyond their power to return it, the plaintiffs were entitled to sue for the value at the time of the conversion, less the amount of their debt, this being their interest in the scrip. *Sunny South Lbr. Co.* v. *Neimeyer Lbr. Co.,* 63 Ark. 268.

The court gave the following instruction on the measure of damages: "If you find for the plaintiffs, then your verdict should be for the highest price at which the scrip could have been sold at the time of the conversion by the defendants, from which deduct the amount of money borrowed by plaintiffs with which to buy the scrip with 10 per cent. per annum interest thereon from the 16th day of March, 1906, until the date of the conversion by the defendants, or either of them, and the balance left, with 6 per cent. interest thereon from the date of the conversion down to this date, would be the true amount due plaintiffs for which you could return your verdict."

This instruction was erroneous in stating the measure of damages to be "the highest price at which the scrip could have been sold at the time of the conversion," etc. *Perkins* v. *Ewan,* 66 Ark. 175; *Sunny South Lbr. Co.* v. *Niemeyer Lbr. Co.,* 63 Ark. 268; *Summers* v. *Heard,* 66 Ark. 550; *American Soda Fountain Co.* v. *Futrall,* 73 Ark. 464.

The exception to the ruling of the court in giving the instruction was not preserved, but we call attention to it in view of another trial.

We do not deem it necessary to discuss other rulings of the court in giving and refusing to give instructions, further than to say that we find them to be correct.

For the error indicated in admitting the improper testimony, the judgment is reversed and the cause remanded for new trial.