ROYAL NEIGHBORS OF AMERICA *v.* McCULLAR.

Opinion delivered June 14, 1920.

1. INSURANCE—PAYMENT OF PREMIUM QUESTION FOR JURY.—In an action on a benefit certificate, *held*, under the evidence, that whether the certificate had been involved by a failure to pay a premium was for the jury.

2. EVIDENCE—RES INTER ALIOS ACTA.—In an action on a benefit certificate, defended on the ground of forfeiture for nonpayment of a premium, it was error to permit insured's husband to testify that he sent her money and insisted on her paying up her lodge dues for the remainder of the year, for the purpose of showing that her attention was called to the importance of paying the dues and that she had the money with which to make the payment.

Appeal from Craighead Circuit Court, Lake City District; *R. H. Dudley,* Judge; reversed.

*Hawthorne & Hawthorne,* for appellant.

1.   There was no evidence in the record to base the interrogatory propounded by the court to the jury, and the peremptory instruction requested by defendant

should have been given.  The court erred in allowing W. H. McCullar to testify in reference to sending his wife $50 and instructing her to pay the premiums on her insurance policy in advance.  Parol evidence as to the contents of writing is inadmissible, and is not the best evidence; further, there is no evidence showing the deceased ever received such a letter or that she paid any dues in advance as requested to do.  86 Ark. 538; 17 Cyc. 471.

2.  The evidence clearly shows that assessment No. 9 was not paid and the policy lapsed.

*Lamb & Frierson,* for appellee.

There is no question of law in this case—only one of fact.  Was the September assessment paid?  The jury found that it had been paid, and that is conclusive.

SMITH, J.  This suit was brought to recover the sum named in the benefit certificate issued by appellant company on the life of Mrs. Nora McCullar, who died October 27, 1918.  The certificate was payable to her infant children, and this suit was brought by appellee as next friend to collect the insurance.

The premiums or assessments were payable monthly and the constitution and by-laws of appellant provided that the failure to pay any one of these assessments would invalidate the certificate, and the defense interposed to the suit is that Mrs. McCullar failed to pay the premium falling due in September, 1918.  There was a verdict and judgment for the face of the certificate, and this appeal is from that judgment.

It is first insisted by appellant that there is no competent testimony that the premium was paid, and that a verdict should, therefore, have been directed in its favor.

We think, however, there was sufficient testimony to take the case to the jury upon that issue, and the testimony tending to support the verdict may be summarized as follows.  John McCullar testified that he was the grandfather of the beneficiaries named in the certificate, and that his son's wife (the insured) and his

nephew's wife were both named Nora, and that they both lived near Jonesboro, and that the mail of each woman was frequently delivered to the other, and that on September 7, 1918, he received a letter from his niece enclosing a receipt for dues paid appellant by his daughter-in-law, and that he gave this receipt to Orlin Turner, a son-in-law, with the request that he mail it on the following Monday morning to Mrs. Nora McCullar, the insured. His daughter, Mrs. Turner, remembered the incident and testified that the receipt was for two dollars and some odd cents, and was dated in September. J. W. Nelms, a disinterested witness, testified that he was present when the conversation between John McCullar and Turner occurred, and that he saw the receipt at the time, and remembers that it was dated in September. Mrs. Alice Riggs testified that a lodge of the appellant company once existed at Lake City, but no meetings had been held since 1915, and that she was the recorder at Lake City, and that the assessments were payable to her. These assessments were payable from the 20th of one month to the 15th of the next. Mrs. Riggs' testimony makes it very apparent that she was not expert nor experienced in keeping accounts, and she testified that she did not always mail out the receipts the day she received the money, as she was frequently too busy to do so. The testimony also shows that at about the time in question Mrs. Riggs had a spell of sickness herself, and that a member of her family became sick and died. Payments to Mrs. Riggs were made by check, by cash, and sometimes by money order, and she kept these payments at her home until she went to town, when she remitted them to appellant. The receipts for admitted payments made to Mrs. Riggs which were produced at the trial were not signed by her.

A receipt dated September 18th was produced; but this was for August. Mrs. Riggs' testimony in regard to this receipt shows that her accounts were not accurately kept. She testified that she had advanced the money covered by that receipt, and that it was not re-

paid to her until after Mrs. McCullar's death, and that the last payment made by Mrs. McCullar was $2.50, at a time when she only owed $2.35, and that this left 15 cents in her hands which she had forgotten about. Each assessment had a separate number, and it is insisted that the receipt about which John McCullar, Turner and his wife and Nelms testified was a receipt dated September 17th. But this cannot be true, as that receipt covered assessment No. 8, and was for only 50 cents and was not actually issued until November or December, when Mrs. Riggs met W. H. McCullar, the husband of the insured, and told him that she had previously paid and remitted that assessment for his wife. The officers of appellant testified that no remittance had been made covering the disputed assessment.

From this testimony the jury might have found that the receipt which had been misdirected to the niece of John McCullar covered the assessment in question. Indeed, if there was such a receipt, it could have covered no other assessment.

We would, therefore, affirm the judgment as being supported by testimony legally sufficient for that purpose but for the fact that certain incompetent testimony was admitted which may have influenced the jury in arriving at the verdict which was returned. W. H. McCullar, the husband of the insured, was permitted to testify that he was in the army from April 27, 1918, to January 12, 1919, and that he was not at home when his wife died; but that in August 1918, he sent her $50 and insisted on her paying her lodge dues up for the remainder of the year.

An objection was overruled to the question which elicited this testimony, and in making that ruling the court stated: "That would be no evidence, gentlemen of the jury, that the wife paid the dues, however." But this is the inference to be drawn from that testimony, and the court's ruling is defended upon the ground that the letter was merely offered to show that the attention of Mrs. McCullar was called to the importance of paying the dues, so that it could not be urged that she had for-

gotten to do so, and to show that she had the money with which to make the payment.''

The maxim, *Res inter alios acta alteri nocere non debet,* excludes this testimony.

''Of maxims relating to the law of evidence, the above (*Res inter alios acta alteri nocere non debet*) may be considered as one of the most important and most useful; its effect is to prevent a litigant party from being concluded or even affected, by the acts, conduct, or declarations of strangers. On the principle of good faith and mutual convenience, a man's own acts are binding upon himself, and are, as well as his conduct and declarations, evidence against him; yet it would not only be highly inconvenient, but also manifestly unjust, that a man should be bound by the acts of mere unauthorized strangers; and if a party ought not to be bound by the acts of strangers, so neither ought their acts or conduct to be used as evidence against him.'' Broom's Legal Maxims (8 ed.), 748.

This maxim was applied in the case of *Hamburg Bank* v. *George,* 92 Ark. 472, in which it was held incompetent to corroborate a witness in this manner. See, also, *Fechheimer-Kiefer Co.* v. *Kempner,* 116 Ark. 482, 486; *Carter* v. *Younger,* 123 Ark. 266, 267, 272; *Donaghey* v. *Williams,* 123 Ark. 411, 425, 426; *Raymond* v. *Raymond,* 134 Ark. 484, 490.

For the error in admitting the incompetent testimony, the judgment will be reversed and the cause remanded for a new trial.