MERCHANTS & PLANTERS BANK *v.* HUMBARGER.

4-6192 147 S. W. 2d 369

Opinion delivered February 10, 1941.

*D. A. Bradham,* for appellant.

*Carroll C. Hollensworth,* for appellee.

GRIFFIN SMITH, C. J. The appeal is from a judgment against Merchants & Planters Bank, Warren, Ark., predicated upon a jury's verdict that W. H. Humbarger deposited $100 for which he was not given credit.[1] The bank contended no such deposit was made.

---

[1] The verdict was signed by ten of the twelve jurors.

For reversal it is argued that prejudicial evidence was improperly admitted and that the court incorrectly charged the jury.

June 10, 1939, J. M. Thompson issued his check, payable to the order of W. H. Humbarger for $180, at Warren Bank. It was indorsed by Humbarger and bears perforation stamp showing payment June 9, 1939, at Warren Bank.[2]

Appellee testified he personally cashed the check and received nine twenty-dollar bills, four of which were placed in a billfold.[3] He then went to Merchants & Planters Bank and handed the money to Assistant Cashier A. L. Moody. He distinctly remembered that he did not get a deposit slip. Early in July he received his bank statement and noticed there was no entry for June 10; whereupon he discussed the matter with Moody, who told him the bank's cash account was $5 short that day. Appellee was unable to explain why he did not request a deposit slip. It was the first time he had failed to do so. He did not know why he cashed the $180 check at Warren Bank instead of taking it to Merchants & Planters Bank where he had been doing business thirty years. On former occasions witness had deposited and cashed checks directly at Merchants & Planters Bank, but on June 10 he needed $80.

Promptly after receiving his statement appellee talked with Moody. Thereafter he discussed the matter with Carl Hollis, president of the bank. He denied having told Hollis or Moody he once had a receipt, and lost it.

Moody testified that appellee came to him, complaining of failure to receive credit for $100; that he examined the bank's books and found there was no entry for that amount, and asked appellee if he could fix

---

[2] Mrs. Joe Thompson, bookkeeper for Warren Bank, testified that the payment date shown by the perforation was an error; that in fact the check was paid June 10.

[3] Appellee testified that after putting the four bills in his billfold he walked from Warren Bank to Merchants & Planters Bank with five of the bills in his hand and his hand in his pocket; that he did not take his hand out of his pocket during the journey.

the exact date, the reply being, ''No, but I have a receipt at home. I can go get that and will come back and tell you.'' Appellee returned and said the receipt could not be found, but the date was June 10. Later appellee said: ''I left that receipt in my shirt pocket, I guess, and my wife took it out.'' Another explanation was: ''I guess my wife must have destroyed it when she washed out my shirt.'' Witness had worked in the bank 21 years, and testified positively that appellee did not deposit the money.

Carl Hollis testified that Moody first informed him of appellee's claim, but that appellee subsequently discussed the transaction with him. This witness also testified that appellee told him he had a receipt. Appellee went away ostensibly to find it, but returned with the explanation it was lost.

Hollis further testified that he asked appellee to give a detailed list of payments made from proceeds of the $180 check. After listing on a sheet of paper those remembered by appellee, Hollis testified he said to appellee: ''Well, here's your $180 accounted for, because this totals $156 or $157.''

Inasmuch as the judgment must be reversed because of the introduction of incompetent evidence, the instructions will not be discussed.

When appellee testified that he received a check for $180 from Thompson, no objection was interposed. However, when Humbarger's counsel asked him to produce the check there was objection on the ground that it has nothing to do with the case. Exceptions were saved to the court's order overruling the objection. In contending that the case of *Donaghey* v. *Williams,* 123 Ark. 411, 185 S. W. 778, is not applicable, there is the assertion on behalf of appellee that the check was made out to him, and that its production at the trial ''. . . merely substantiated his statement that he had a hundred dollars.''

We think this is the crux of the controversy. The check was introduced to substantiate appellee's contention that he came into possession of money. But this

occurred at another bank and had no direct relation to the deposit appellee claims he made. His dealings with appellant began when he tendered the money to Moody. He testified that he had five twenty-dollar bills. The issue was not whether he had the money, but whether he handed it to Moody.

In Jones' Evidence in Civil Cases, 4th ed., v. 1, p. 451, it is said: "The declarations of a party which are favorable to his interest are not admissible in his behalf. Manifestly it would be unsafe if, without restriction, parties to litigation were allowed to support their claims by proving their own statements made out of court. Such a practice would be open not only to all the objections which exist against the admission of hearsay in general, but would also open the door to fraud and to the fabrication of testimony. To be inadmissible on this ground, declarations must be self-serving with respect to the interest of the declarant and in relation to the transaction involved in the action in which it is sought to introduce them in evidence."

In Jones' Commentaries on evidence, 2d ed., v. 2, p. 1639, it is said: "The mere recital of a fact, that is, the mere oral assertion, or written entry, by any individual, that a particular fact is true, cannot be received in evidence. But whenever the declaration or entry is itself a fact, or is a part of the *res gestae,* the objection ceases." [4]

An analogous case is *Donaghey* v. *Williams,* 123 Ark. 411, 185 S. W. 778. Williams contended Donaghey had employed him as campaign manager. Donaghey is alleged to have stated that plenty of money was available, and to have directed Williams to take charge of

[4] Quoting "a learned author," Jones says: "The distinction between a mere recital, which is not evidence, and a declaration or entry, which is to be considered as a fact in the transaction, and therefore is evidence, frequently occasions much discussion, although the test by which the admissibility is to be tried seems to be simple. If the declaration, or entry has no tendency to illustrate the question, except as a mere abstract statement, detached from any particular fact in dispute, and depending for its effect entirely on the credit of the person who makes it, it is not admissible in evidence; but if, on the contrary, any importance can be attached to it as a circumstance which is a part of the transaction itself, and checking a degree of credit from its connection with the circumstances, independently of any credit to be attached to the speaker or writer, then the declaration or entry is admissible in evidence."

headquarters and manage the campaign "as though it were your own business." Donaghey advanced $2,500 and contended this was all Williams was authorized to use. Williams insisted he was given discretion as to expenditures, and that Donaghey asked him personally to advance $2,500, which was done. Williams claimed credit for expenditures he could not identify,[5] but in attempting to verify sums totaling $2,500, checks drawn on a Forrest City bank of which Williams was an officer were introduced.

The court's comment was: "Checks and drafts were drawn by the appellee and many of them made payable to himself. On their face they do not show that appellant was in any manner connected therewith, and the evidence affirmatively shows that appellant was not present when the checks and drafts were drawn. They relate wholly to transactions with other persons. These checks and drafts were but in the nature of self-serving evidence by the appellee, tending to corroborate his testimony that he had paid out the various amounts testified to by him on account of appellant. It was not competent for appellee to corroborate his own testimony in this way. See *Hamburg Bank* v. *George,* 92 Ark. 472, 123 S. W. 654; *Fechheimer-Kiefer Co.* v. *Kempner,* 116 Ark. 482, 173 S. W. 179."

In *Royal Neighbors of America* v. *McCullar,* 144 Ark. 447, 222 S. W. 708, the appellee sued as next friend to collect insurance payable to his children, the policy having been issued to the mother of the children, wife of appellee. A point at issue was whether premiums had been paid. A headnote is: "In an action on a benefit certificate, defended on the ground of forfeiture for non-payment of a premium, it was error to permit insured's husband to testify that he sent her money and insisted on her paying up her lodge dues for the remainder of the year, for the purpose of showing that her attention was called to the importance of paying the

---

[5] The opinion contains this statement: "Appellee [Williams] kept no books and had no receipts or vouchers. Appellee testified that he knew the money he paid out [aggregating $7,664.44] was used in the campaign and for campaign purposes, but whether the parties to whom he paid it used it for that purpose he could not say."

dues *and that she had the money with which to make the payment.*"6

In the Donaghey case Williams sought to prove he had paid certain sums for campaign purposes. Having testified that he had made such payments, he introduced checks and drafts representing various sums and in effect said, "Here is corroboration of my assertions. These checks and drafts prove I received the money; hence a presumption arises that I spent it in the campaign."

Humbarger in effect said: "I deposited $100 in Merchants & Planters Bank by handing to Assistant Cashier Moody five twenty-dollar bills. In corroboration of my assertion that I did make the deposit, I exhibit to you a check I cashed at another bank."

If in the case at bar appellant had questioned appellee's capacity to make the deposit—that is, if it had challenged the assertion that appellee entered the bank with $100, then *where* and *how* he procured the money would have been material. But this is not the issue. The sole question is whether appellee deposited $100, and he must stand or fall upon the jury's acceptance or rejection of the assertion, fortified only by circumstances so closely connected with the alleged relationship of debtor and creditor as to be a part of the thing done— the *res gestae*—or by testimony not of a self-serving character.

For the error indicated, the judgment must be reversed. The cause is remanded.

6 Italics supplied. [But compare *Kavanaugh* v. *Morgan*, 172 Ark. 11, 287 S. W. 1022, and see dissenting opinion by Mr. Chief Justice McCULLOCH.]