956

## MILLERS CASUALTY INSURANCE COMPANY
### v. William E. MURPHY et ux

73-78                                   497 S.W. 2d 15

Opinion delivered July 16, 1973

*Griffin Smith,* for appellant.

*Floyd J. Lofton,* for appellees.

John A. Fogleman, Justice. This action was commenced September 9, 1972, as a petition for declaratory judgment under Ark. Stat. Ann. §§ 34-2501, et seq. (Repl. 1962) by appellees against appellant, seeking to determine rights, status and liability under an automobile liability insurance policy issued by appellant to appellee William E. Murphy. The policy was issued September 4, 1970, for a six-month period ending March 4, 1971, and was renewed for the period ending September 4, 1971. The specific issue before the court was whether or not the policy was in force subsequent to September 4, 1971.

William Murphy testified that the premium for the period in question had not been tendered on time because

of personal financial difficulties. On September 19, 1971, his wife was involved in an accident which resulted in personal injury to another. The next day, Murphy said, he went to the office of Ray Holland to inquire about employment in Holland's trucking business, and to secure an "advance" until a paycheck from a prior employer was received, so he might have funds to pay his insurance premium. Murphy said that while there, he telephoned J. M. Pickard, appellant's agent in Little Rock with whom Murphy had dealt regarding the policy, to inquire about the status of his policy. The evidence is in conflict as to the date of this call and as to what was said in this conversation and in a subsequent meeting between Murphy and Pickard.

Appellant concedes that even though the policy expired on September 4, 1971, a 20-day "grace period" was in effect until September 24, so that if payment of the late premium was made during this period, the policy would have been revived as of September 4. During this 20-day period, the local agent of appellant (Pickard) had authority to accept this late payment, and is, in fact, notified by appellant of each overdue account. The specific fact question before the chancellor was whether or not Murphy tendered payment to appellant's agent before or after September 24. The chancellor found that payment was tendered on September 20, and that the policy was in force at the time the claim arose. There is no contention that the premium was actually paid, as whatever tender made was refused.

Appellant alleges two points for reversal of the chancellor's decree. Neither requires a reversal. Appellant contends that both admission and consideration of testimony pertaining to a check issued by Holland to Murphy on September 20 in the amount of $100 were error under our holding in *Merchants and Planters Bank* v. *Humbarger,* 201 Ark. 910, 147 S.W. 2d 369. The check was not formally introduced during trial, but only referred to by the parties. The chancellor allowed appellees five days after the trial to submit the check if it could be located by Holland. Apparently it was transmitted to the court after the trial, as promised. It was for $100, bore the date of September 20, 1971, and an endorsement in-

dicating that it was cashed at a Texaco truck center. The check was used by appellee to evidence the "advance" given September 20 by Holland. Appellant contends that under *Merchants* the check was improperly admitted to prove the payment of the premium. We do not consider *Merchants* controlling in this situation. Instead we find it readily distinguishable since appellee does not contend that the introduction of the check was evidence of payment, but only that an advance had been made to him on the date of the check. Two prior cases are nearer in point here. They are *Royal Neighbors of America* v. *McCullar*, 144 Ark. 447, 222 S.W. 708, and *Chase* v. *Carney*, 60 Ark. 491, 31 S.W. 43. In *Royal Neighbors*, the appellant organization offered death benefits to its members, for which premiums were paid by means of monthly dues payments. As in the case at bar, a controversy arose as to whether or not a payment had been made. Testimony of the husband of the insured was admitted which showed that he had sent his wife $50 and insisted that she pay her lodge dues for the remainder of the year. We held that the admission of this testimony was reversible error because the inference to be drawn was that the wife paid the dues, as she had the money to do so and could not have forgotten in light of the reminder. Our holding was based upon the doctrine of "Res inter alios acta alteri nocere non debet." This doctrine is nothing more than a recognition of the lack of relevancy that transactions between a party and a third person have to transactions between the parties themselves, especially as in *Royal Neighbors*, where such transactions are sought to be used for proof of an important event such as the unlikelihood that the wife would have thereafter failed to make payment of an insurance premium when due, or as in *Merchants*, the deposit of money in a banking account. As stated in *Royal Neighbors*, a litigant should not be affected by acts, conduct or declarations of strangers to a transaction. This rule should not be extended further than to exclude testimony about third party transactions when they are not relevant to the main issue.

The general rule which we follow is stated in Jones on Evidence 399, § 4:9 (Sixth Edition) as follows:

Ordinarily conduct of or transactions between third parties or strangers to the action are irrelevant on

the issue of the conduct of a party to the action. This is generally true also with respect to transactions between a party and a stranger to the action. But the exclusion is not, or should not be, on the ground that the transaction is collateral, but because relevancy is not established. When relevancy appears, evidence of the transaction should be admitted if its value as evidence is not outweighed by the usual counterbalancing factors. The modern trend is away from a rigid application of a rule of exclusion.

Where there is a relationship established between a party and third persons which tends to make him responsible for their conduct, the transaction would be relevant. Also the circumstances of a particular case may render transactions with or among third persons relevant and admissible for a limited purpose.

We recognized and utilized the rule of relevancy in *Chase* v. *Carney*, supra. We held exclusion of evidence of a third party transaction erroneous because of its relevancy to an issue in the case and its tendency to corroborate the testimony of a party where the testimony of the two parties to the transaction was contradictory. The issue was whether a dispute as to a real estate title was pending at the time one party obtained $200 from the other. One of them contended that it was a loan, the other that it was in payment for settling the adverse title claim.

In the case at bar, the check and its issuance were relevant to the issue as to the time of tender. Pickard admitted that Murphy had called him on the telephone relative to the insurance policy and that the Murphys came to his office. While he could not recall the date, he was positive that it was after the grace period. He had no record pertaining to the call or the visit, but insisted that Murphy did not inquire in the telephone conversation whether the policy was in effect and that, upon their visit to his office, he told the Murphys that the policy had expired and said that he had called the company for a check of their records. Murphy had testified that he had called Pickard from Holland's office the day the check was written and asked if the policy was issued, but did not advise

Pickard of the loss. Murphy said that Pickard told him in the telephone conversation that the policy was in effect but that he needed to get down and pay a premium. Murphy testified that he tendered the money to Pickard, but that Pickard became "real cold" and rejected the payment when told about the collision. Murphy said that Pickard tried to call his home office at this time, but, when unable to reach the person he sought to talk with, offered prospective coverage in another company to the Murphys. Murphy's testimony was corroborated by that of his wife. On rebuttal Ray Holland, who had recommended Pickard to Murphy when the policy was taken out, testified that he "eavesdropped" the telephone conversation in his office, and that Murphy did ask Pickard if the policy was in effect and that Pickard said that Murphy had until the following Thursday night to make a premium payment.

Thus, the check and Holland's testimony were relevant in order to show the time of the alleged tender by appellee to Pickard, the time of the telephone conversation between appellee and Pickard, and where appellees were on the date in question. So, there was no error in the admission of the check. It appears that appellant may have recognized the relevancy of the check itself because the court's inquiry whether there would be any objection if the original check were found and tendered was answered in the negative. Although a copy of the letter of transmittal of the check to the chancellor went to appellant's attorney, it does not appear that any further objection to its consideration was registered.

Appellant's other contention is that the chancellor's findings were against the preponderance of the evidence, particularly when the testimony of appellant and Holland pertaining to possession of the $100 is removed from consideration. For the reasons hereinabove stated, this evidence is considered by us in determining that the decree of the chancellor was not clearly against the preponderance of the evidence. Appellant's main objection in the trial court (but not argued here) was that the testimony of Ray Holland relative to the telephone conversation was illegally obtained and improper because he had been listening on an extension. Of course, this point is not

before us, and thus Holland's testimony about the conversation was corroborative of appellee's testimony that Pickard recognized that the policy would be in force if payment was tendered prior to September 24. Thus, the testimony of appellee and his wife that payment was tendered and rejected, Pickard's actions in filling out an accident report when the Murphys came to his office and the contradictory testimony of Pickard based only on recollection and the refreshing of his memory by a pretrial telephone conversation with an official of Millers present questions of credibility which prevent us from saying that the decree is clearly against the preponderance of the evidence, even if we might otherwise entertain any doubt.

The decree is affirmed.