McNEILL *v.* ROWLAND.

4-5598 132 S. W. 2d 370

Opinion delivered October 23, 1939.

*W. B. Scott,* for appellant.

*W. A. Percy, Thomas M. Keesee* and *Alvin E. Fink,* for appellee.

HOLT, J. On July 19, 1938, appellee, T. J. Rowland, filed two suits in the Crittenden chancery court on two promissory notes. These two notes were secured by deed of trust on real property, and a foreclosure was sought.

By stipulation of counsel, the two causes were consolidated for trial.

Appellants first filed a motion to dismiss plaintiff's (appellee's) complaint on the ground that he was not

the owner of the notes in question, but had previously assigned them to his daughter, Mrs. Dorothy Rowland Bleakney, and had no cause of action for the collection of the indebtedness due on said notes.

The court overruled this motion to dismiss, and thereupon appellants answered denying "that plaintiff has been the owner and holder of said promissory notes and mortgage ever since their execution, and denies that he is now the owner and holder of said promissory notes and mortgage," and "specifically pleads as a bar to this cause of action the statute of limitations against the payment of said notes and indebtedness."

The chancellor found that the statute of limitations had run against one of the defendants below, but that as to Earl H. McNeill, appellant, the statute of limitations had been tolled by the payment of certain sums amounting to $455, and rendered judgment against him, less these credits, in the sum of $1,484.63, and decreed foreclosure of the mortgaged property in satisfaction thereof. From this decree of the trial court, Earl H. McNeill brings this appeal.

There are only two questions to be decided by this court. 1. Did the trial court commit error in refusing to sustain the motion of defendants below to dismiss plaintiff's (appellee's) complaint? 2. Were the two notes in question barred by the five-year statute of limitations? (Pope's Digest, § 8933.)

The evidence, as reflected by this record, is to the following effect: Appellee, T. J. Rowland, is the step-father of appellant, Earl H. McNeill, and of S. P. McNeill, another defendant in the original cause of action against whom no judgment was rendered. On January 29, 1927, appellant, Earl H. McNeill, and his brother, S. P. McNeill, borrowed $1,221 from T. J. Rowland, appellee, evidencing the loan by two promissory notes of that date, one in the sum of $600 and the other $621, both due and payable January 29, 1928, drawing interest at five per cent., and secured by a deed of trust on certain lands.

It is undisputed that the only indorsements of any kind appearing on each of the notes in question is the following: "Pay to the order of Mrs. Dorothy Rowland Bleakney. T. J. Roland. T. J. Rowland."

No principal or interest payments appear on either of the notes. It is in evidence, however, that appellant, Earl H. McNeill, made nine different payments to appellee, T. J. Rowland, totaling $455, as follows: "10-1-33, $25; 10-20-34, $150; 5-14-34, $20; 6-20-34, $45; 7-1-34, $50; 8-15-34, $25; 11-27-35, $100; 10-15-36, $15; 12-26-36, $25."

Appellant attempted to explain these payments on the ground that they were gifts or donations to appellee, his step-father, and were not intended as payments, and in further explanation stated: "The $25 on 10-1-23 was given to my mother to give to Mr. Rowland. I will have to look up my memorandum to know what he wanted that for. Now the next item 10-20-34, now that was for a model A '29 Ford, amount $150; and this one 5-13-34, $20, I don't recall about that. This next one 6-20-34, that was for $45, and that $45 was for that house car or trailer, one of those little trailers you know. Now, this next item dated 7-1-34, $50, I don't recall what that was for. This one dated 8-15-34, $25, I don't recall what that was for. Then this check dated 11-27-35, was the $100—I remember about this check, I gave that to my mother to give Mr. Rowland for him to do something in connection with his picture show business, and this one 10-15-36, $15, that was the money I paid him in West Memphis, Arkansas, to enable him to pay his rent for a little concession he had over there"; that he gave them to his mother and Rowland from time to time, and made the checks payable to Rowland because he did not want to put his mother to the trouble of going down town to get them cashed.

Appellee Rowland testified that these payments were made by appellant to him as payments on the notes in question, and further: "Q. Do you own these notes? A. I do. Q. Who, if anyone else, has an interest in these notes? A. Nobody in the world. Q. Is your

daughter claiming an interest in these notes? A. None whatever.''

The record further discloses that sometime prior to the filing of the foreclosure suit appellee Rowland indorsed the notes as heretofore indicated and forwarded them to his daughter for collection. There is no evidence that she had any interest in the notes or that she paid anything for them. After retaining the notes for two or three months she returned them to her father who sometime thereafter brought suit to enforce their collection. The only evidence relative to the indorsement and sending of the notes to Dorothy Rowland Bleakney is the testimony of appellee and a letter which he wrote to his daughter. As to the facts in connection with the indorsement and the mailing of the notes by Rowland to his daughter, appellant, McNeill, testified as follows: ''Q. You heard Mr. Rowland testify about mailing those notes to his daughter for collection and about her mailing them back to him? A. I heard that. Q. You have no reason to question that statement have you? A. No, I don't even know if that's the truth. Q. You don't know if it's untrue do you? A. No, I don't know if it's untrue, I don't know anything about it. Q. Then as far as you know of your own knowledge he might have had those notes all the time? A. He could have had them all the time as far as I know of my own knowledge.''

That portion of the letter written by appellee to his daughter which is material is as follows:

''Well, Dorothy, I am going to have you git a first-class lawyer in Portland, one that will look after those notes and have them renew. I just cannot get an understanding from the boys. I believe they are trying to beat me out of that money. All I got out of them is about a hundred dollars & an old car in all. Explain to your lawyer. You want these notes renew if they refuse, then bring suit. The farm is one of the best cotton land in Arkansas and they are making, but are putting it over me. If it breaks Ada and myself up, I will be satisfied as then I know what their game is. Don't neglect this for my sake. I ask you as it has caused lots of worries.

Now understand, we have had no hard feelings whatever, but I just can't get an understand unless it comes through a lawyer it is pure and simple matter of business and it must be attended to before it is too late, if it is not already. There is something wrong in Denmark. I will send you the records of the notes that are recorded in Marion, Crittenden County, Ark., tomorrow. Monday have lawyer take it up with Mr. Earl McNeill, Turrell, Ark.''

We consider first the question whether appellant's motion to dismiss in the trial court based on the fact the notes in question were indorsed by appellee, as set out *supra,* should have been sustained and the suit dismissed. We are of the view that the chancellor was correct in denying this motion of appellant.

While it is true that the indorsement on the notes in question, ''Pay to the order of Mrs. Dorothy Rowland Bleakney. T. J. Roland, T. J. Rowland,'' appears to be absolute and contains nothing showing that it was made by appellee for the purpose of collection only; this court has repeatedly held that, even though an indorsement is absolute in form and does not appear to be for collection only, the fact that the purpose of the indorsement was for collection only may be shown by parol testimony.

In *Johnston* v. *Schnabaum,* 86 Ark. 82, 85, 109 S. W. 1163, 17 L. R. A., N. S., 838, 15 Ann. Cas. 876, this court said: ''The other part of the indorsement was unrestricted, and unless explained, would render the indorser liable. But it is shown by undisputed evidence that the note was sent to the Bank of Randolph County for collection, and that the indorsement was made only for that purpose.

''The question arises, then, whether parol evidence is admissible to explain or qualify an unrestricted indorsement. The authorities seem to uniformly sustain the view that under such circumstances parol testimony may be admissible for that purpose. Mr. Daniel, in discussing the various circumstances under which parol testimony is admissible for such purpose says: 'Secondly,

it might be shown that the indorsement was upon trust for special purpose, as from a principal to an agent, to enable him to use the instrument or the money in a particular way, or for collection.' 2 Daniel, Negotiable Instruments, § 720.''

And again in *First National Bank of Fort Smith v. Brunk,* 170 Ark. 583, 280 S. W. 372, this court said: ''Appellant asks for a reversal of the judgment because the trial court permitted appellee to explain or qualify his indorsement of the draft in blank by parol evidence. The rule is practically universal that unrestricted indorsements of commercial paper may be explained or qualified by parol evidence.''

We think it clear, therefore, that the court did not commit error in allowing appellee Rowland to explain that his unrestricted indorsement on the notes was for collection only, and we think the evidence justified the chancellor in holding that title to the notes in question never passed out of the hands of appellee Rowland; at least, we cannot say that his findings were against a preponderance of the evidence.

The law is also well settled, as we view this record, that when the notes in question were returned to appellee by his daughter he had the right to strike out his indorsement or leave it on the notes and simply disregard it and bring suit in his own name.

Section 10206 of Pope's Digest is as follows: ''The holder may at any time strike out any indorsement which is not necessary to his title. The indorser whose indorsement is struck out, and all indorsers subsequent to him, are thereby released from liability on the instrument.''

In 10 C. J. S., § 215, p. 706, the author says: ''Where an indorser of negotiable paper becomes the holder by retransfer, he may strike out his own indorsement, and all indorsements subsequent to his own, whether special or not. Also, if the holder has indorsed the note for collection he may in like manner strike out his own indorsement when the paper returns to his possession, or he may strike out his own indorsement as collateral. However, an indorser on retransfer may hold the paper

without striking out his own indorsement." See, also, *Dickinson* v. *Burr*, 15 Ark. 372 and *Smith* v. *Childress*, 27 Ark. 328.

We now come to the second question presented by appellant wherein he contends that the notes sued on are barred by the five year statute of limitations. We cannot agree to this contention of appellant.

The following facts appear to be undisputed: The notes and deed of trust were executed by appellant and the money received by him has not been repaid. Rowland repeatedly requested appellant McNeill to make payments on the notes, and, in response to these demands, appellant did make the nine payments heretofore indicated, and at the time of making these payments McNeill did not tell Rowland that they were not intended as payments on the notes in question, but were intended as gifts.

The evidence further reflects that some of these payments made to Rowland by McNeill were made within five years of the institution of the suit on the notes.

While it is true that these payments were made by appellant after the bar of the statute of limitations had attached, the rule seems to be well settled that, as between the parties, such a payment on a debt removes the bar and revives the debt. In the instant case the rights of third parties are not involved.

In *Johnson* v. *Spangler*, 176 Ark. 328, 2 S. W. 2d 1089, 59 A. L. R. 899, this court held that a payment made after a note was barred revived the indebtedness and a new period of five years began to run from the date of payment and said, quoting Wood on Limitations, (4th ed.), vol. 1, p. 601: "A part payment of a debt, though made after the bar of limitations has attached, removes the bar and revives the debt, but the revival cannot affect the rights of third persons attaching after the bar was complete and before the revival. Part payment on a debt operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of limitations, of any such lapse of time as may have occurred previous to the payment being

made. A partial payment made on account of an existing debt takes the case out of the statute of limitations. A partial payment of a note takes the entire debt out of the running of the statute, and time is computed from the date of such payment.''

Again this court in applying this rule to notes secured by mortgages, in *Tyson* v. *Mayweather,* 170 Ark. 660, 663, 281 S. W. 1, said: ''It is argued that these credits on the margin of the record were not signed or attested in the manner provided by § 7408 of Crawford & Moses' Digest. The section of the statute referred to was enacted for the purpose of giving notice to third parties of payments made on the mortgage indebtedness. As between mortgagor and mortgagee, it is not necessary that payments be indorsed on the margin of the record to fix a new date for the statute of limitations to run. The widow and heirs of the mortgagor are not third parties. Their rights are derivative, and they stand in the place of the mortgagor. The payment itself, as between the parties, fixes a new date for the statute of limitations to begin to run.''

While it is true, as appellant contends, that the payments by him were not in fact indorsed as credits on the back of the notes in question, the rule is well established that such indorsement is not necessary to arrest the running of the statute of limitations. It is the fact of payment that tolls the statute and not the indorsement of a payment on the notes in question.

In *McAbee* v. *Wiley,* 92 Ark. 245, 122 S. W. 623, this court said: ''The proof of a payment on indebtedness and of the indorsement of same upon the written evidence of that indebtedness may be made in the same manner as the proof of any other fact. It may be made directly, or by circumstances, or by the admissions of the defendant. It is actually the fact of the payment that tolls the statute, and not the indorsement; the indorsement is only a memorandum, or at most an evidence, of such payment . . .''

We agree with appellant that the burden was on appellee to show that the payments were made on the

notes as contended by him, since he relied upon such payments to remove the bar of the statute of limitations. It is our view, however, that appellee has met this burden by a preponderance of the testimony.

We think it equally true that the burden was on appellant McNeill to prove that these payments which he made to Rowland were intended as gifts and not as payments on the notes. Where it has been established that sums of money were paid by a debtor to a creditor, the presumption is that the money so paid was intended as payment on the debt and not as gifts or donations.

In 28 C. J. 669, the rule is announced as follows: "Ordinarily an unexplained payment of money will be presumed to have been made in payment of a debt, or as a loan, rather than as a gift." The text-writer then cites the case of *Miller* v. *Miller*, 169 Mo. App. 432, 155 S. W. 76, wherein the court held: "Where one sends money to another, the law presumes that it was in payment of a debt, and not a gift alone. . . . It is the partial payment on a note which tolls the statute of limitations or removes the bar after it has become complete, and not the formal crediting of the payment thereon. . . . Where defendant's intestate, who owed plaintiff several notes, completely barred by limitations, made a general payment, plaintiff may apply it to the largest note or to whichever note will best subserve his interest."

The learned chancellor in his written opinion in this case, among other things, said: "There was no evidence tending to show that, at the time the payments were so made, plaintiff was informed or had any reason to believe that they were donations or gifts. Defendants did not say anything at the time of making the payments which would cause plaintiff to believe that the payments were intended as gifts."

We think a clear preponderance of the testimony sustains this finding of the trial court.

On the whole case, we conclude, therefore, that the decree of the trial court is correct, and accordingly we affirm.