THOMASON v. WILCOX.

4-6198                                      147 S. W. 2d 725

Opinion delivered February 10, 1941.

*J. E. Ray,* for appellant.

*M. F. Elms,* for appellee.

HUMPHREYS, J. Appellee instituted suit in the circuit court of Arkansas county, Northern District, against appellant to recover a balance of $356.57 upon an open account for groceries purchased from time to time over a period of years up to and including the year 1938.

It was alleged in the complaint that on May 23, 1939, the account showed a balance due of $381.57, and that on said date appellant made a payment on said account of $25, leaving a balance of $356.57 due thereon. It was also alleged that the accounting system kept by appellee was in the form of daily charge tickets and credits and that it was impracticable to attach the slips owing to the large number of them, but that appellee held them subject to the inspection of appellant.

Appellant filed a written motion to require appellee to file an itemized statement of the account showing dates and the amounts, and that appellant be given sufficient time thereafter to file an answer.

This motion was conceded and appellee filed a complete, detailed itemized statement of the account sued on showing each item or purchase of merchandise and each credit on said account.

Subsequently appellant filed an answer as follows: "The appellant for his answer to the complaint of the appellee says: That he denies each and every material allegation of the complaint.

"The appellant as a further defense says: That several years ago he traded with the appellee at her south store, called 'Wilcox'; that he did this trading between the dates of October 25th, 1931, and March 3, 1933; that when he quit trading there he owed this store nothing; that he made no payment of $25 or any other amount on the account appellee claims this appellant owes at said store, that it has been six years

and five months since the last purchase at this store to the filing of this suit, and this appellant specifically pleads the three years statute of limitations as prescribed in § 8928 of Pope's Digest.

"For further defense this appellant says: That he traded with the Cashway, a store about one block north of Wilcox, for several years; that on the 31st day of December, 1938, he owed this store the sum of $102.75, and received a statement from the appellee on the above date for this amount; that on the 23rd day of May, 1939, he made a payment on this account to the appellee herein in the sum of $25; that this appellant's eyes are very bad, and he cannot see to write a check, but he can sign his name to a check, but that he never writes a check but has to trust to other people to write the check and he signs it; that on this occasion he asked the appellee to write him a check for $25, on the Cashway account, and that he would pay the balance as soon as he could get to it; that if the appellee applied this payment on an old account it was a fraud upon this appellant; that after this payment on the $102.75 account it left a balance of $77.75; that on the 11th day of July, 1939, he gave the appellee a check for the balance of $77.75; that he gave this check to appellee at her place of business in the city of Stuttgart, Arkansas; that said check was drawn on a local bank, to-wit: The Peoples National Bank of Stuttgart, Arkansas. That check was marked, 'Payment in full'; that appellee accepted said check and indorsed said check, and kept said check several days and then had her husband to bring said check back with a pencil mark through the indorsement; that the money was in said bank to pay said check at the time it was given and accepted, and has at all times since the giving of said check remained therein and is in there now, and this appellant has been ready and willing to return said check to this appellee at all times since it was delivered back to him, and now offers this same check to this appellee in open court; that said check is the property of this appellee and has been at all times since it was brought back to this appellant by the husband of this appellee, and since the day she accepted and indorsed it.

"Wherefore, having fully answered, this appellant prays that this suit be dismissed and that he go hence with his costs."

At this juncture and before the trial began appellant tendered $77.75 in full settlement of the debt which tender was refused by appellee.

Thereupon the cause was submitted upon the pleadings, testimony introduced by the respective parties and the instructions of the court, resulting in a verdict and judgment against appellant for $356.50, from which is this appeal.

The testimony introduced by appellee was, in substance, to the effect that she owned two stores in Stuttgart and that during 1931, 1932 and 1933, appellant purchased groceries which were charged to him and was given credit for payments made by him at the Wilcox Cash Grocery, which was the largest store owned by appellee and that after 1933 he purchased groceries at the other store which were charged to him and was given credit for payments made by him at the Cashway Store, or smaller store; that the system of charges and credits was the same at both stores, the charges being by Wilcox Cash Grocery and the credits given by Wilcox Cash Grocery. In other words, the bookkeeping being in the name of Wilcox Cash Grocery although one store was known as Wilcox Cash Grocery and the other known as the Cashway Store. Both stores were owned and operated by appellee, but in different buildings under different names; that because of the business falling off the stock of goods and bookkeeping files of the Cashway Store were moved to the Wilcox Cash Grocery; that after the stock and bookkeeping files were removed appellant ceased to buy or trade with appellee; that at that time the books at the Cashway Store showed that appellant owed the said store a balance of $102.75 and at the store of Wilcox Cash Grocery a balance of $278.82; that on May 23, 1939, appellee requested appellant to pay his account and he said he could not pay more than $25 for which he gave his check as follows:

"Stuttgart, Ark., 5-23, 1939

"The Peoples National Bank

Pay to the order of     Wilcox Gro.         $25.00

Twenty-five & no/100 ........................................................Dollars.

For ...........................            W. A. Thomason."

Appellee wrote the check out for appellant and he signed it, but did not tell appellee whether to credit same on the balance due for purchases at the Cashway Store or that due for purchases at the Wilcox Cash Grocery; that on July 11, 1939, appellant brought in a check which had already been made out and handed it to appellee's husband, which check is as follows:

"The Peoples National Bank

"Stuttgart, Ark.       July 11, 1939       No. ............

Pay to the order of     Wilcox Cash Grocery     $77.75

Seventy Seven and 75/100 ........................................Dollars

For Payment in full          W. A. Thomason

(indorsement on back—Wilcox Cash Gro.)"

They kept this check a few days and indorsed it, but before presenting it to the bank for payment appellee or her husband, Fred Wilcox, noticed that it stated "For payment in full," and she refused to cash it and they ran a line through the indorsement and requested appellant to write a new check leaving out "For payment in full," which he refused to do, and that thereupon they returned the check to appellant; that in answer to questions propounded to appellee she stated that both checks were made payable to the Wilcox Cash Grocery; that at the times the checks were given the goods and merchandise and files of the Cashway Store which was about a half block away had been moved up to the Wilcox Cash Grocery; that they used the same tickets at both stores, because they owned both stores, and that all the accounts, including their bank account, were kept in the name of Wilcox Cash Grocery; that when appellant gave her the $25 check nothing was said about where to apply it; that she gave him a receipt on

the Wilcox Cash Grocery slip; that the bank account and accounts paid were handled in the name of Wilcox Cash Grocery—all one account which was for the store down the street and for the one up here, meaning the Wilcox Cash Grocery.

The testimony introduced by appellant was, in substance, to the effect that appellant traded in the years 1931, 1932 and 1933 at the Wilcox Cash Grocery and that when they opened the store about a half block away and called it the Cashway Store on account of his relative being in charge of the Cashway Store he began to trade at that store; that at the time he began to trade at the Cashway Store nothing was said about him owing any balance at the Wilcox Cash Store, and that he destroyed all his slips showing charges and credits and had never received any separate statement from the Wilcox Cash Grocery calling his attention to any balance he might have owed there; that he did not owe the Wilcox Cash Grocery $282.75 or any other sum when he began to trade at the Cashway Store; that he knew appellee owned and operated both stores; that after the Cashway Store was closed and goods moved up to the Wilcox Cash Grocery along with the files for tickets he owed for goods purchased at the Cashway Store he owed a balance of $102.75; that on July 23, 1939, he paid $25 on the account he had run at the Cashway Store and that he gave the check at the request of appellee and did not notice that it was issued to Wilcox Cash Grocery, but that he told appellee to give him credit on the account that he had run at the Cashway Store; that on July 11, 1939, after the payment of the $25 check he owed a balance of $77.75 for goods he had purchased at the Cashway Store and that he drew a check on that date for $77.75 and noted on it that it was in full payment; that some time after they brought that check back to him which had been indorsed, but the indorsement stricken out, and asked him to write a check for the amount without stating that it was for payment in full which he refused to do; that he admitted owing that amount, but denied owing any other amount to appellee; that the check for $77.75 was returned to him.

At the conclusion of the testimony the court gave two instructions on his own motion and one at the request of the appellee. Each of these instructions was objected to by appellant generally, but not specifically. In other words appellant did not point out any error the court had committed in giving them. Appellant requested no instructions.

The three instructions given by the court were as follows: Instruction No. 2A, (given by the court on his own motion.) The defendant, Thomason, contends that he issued his check in the sum of $77.75 in full settlement of his account with the plaintiff and that the plaintiff accepted it with the notation 'in full payment.' The plaintiff contends that at the time he accepted the check he did not discover the notation on the check 'in full payment' but after discovering the notation on the check, he refused to cash the check. These are questions of fact for you to determine, under the testimony. If you find from the testimony that the plaintiff accepted the check, with the knowledge that it was a final settlement between the parties to the suit, then the plaintiff can only recover the sum of $77.75. Whatever your verdict is, let it be signed by one of your body as foreman and return same into open court. If nine of you gentlemen agree upon a verdict, that meets the requirements of the law and return that verdict into open court.''

Instruction No. 1A. (given by the court on his own motion). Gentlemen of the jury: The plaintiff brings this suit against the defendant, to recover an indebtedness that she claims due her by the defendant in the sum of so many dollars as shown by the proof for goods, wares and merchandise sold and delivered to the defendant. The defendant admits that he is indebted to the plaintiff in the sum of $77.75 and offers to pay that sum into the register of the court, or permit judgment against him in that sum, but claims that he is not indebted to the plaintiff in any other sum. The plaintiff contends that the defendant is still indebted to her after giving him credit for the $77.75 and the plaintiff contends that the total amount due her, after giving de-

fendant credit for the $77.75 is $356.00 and some few cents. The issues in this case present a question of fact for you to determine, under all the facts and circumstances and surroundings in the case. If you find from the testimony that the defendant is indebted to the plaintiff in any other sum than the $77.75 which he admits, you will so say by your verdict."

Appellee's No. 1 (Requested by the plaintiff and given by the court). "You are instructed that if you find from the evidence in this case the defendant is indebted to plaintiff on an open, running account, and you further find that less than three years before the commencement of this action, defendant made a general payment on account, without specifying any particular items which said payment was to cover, then you are instructed that such payment would arrest the running of the statute of limitations and set up a new starting point from the date of such payment, and, in such case, you should find for the plaintiff for the amount you find the defendant may be indebted to plaintiff.

"You are further instructed if you find from the evidence that the defendant owed two separate accounts to the plaintiff and he gave a check for $25 to apply on one of the accounts, specifying which account the $25 was to be applied to, and the money was credited to another account this would not toll the statute of limitations on that particular account."

We think these instructions submitted the issues of fact involved in the case to the jury for determination.

The questions of fact involved were, first, whether appellant owed appellee $356 after given credit for $77.75 on a continuing open account or whether he owed only $77.75 which he tendered in full payment. Appellant testified that he owed nothing except $102.75 balance on the goods he had purchased at the Cashway Store when it closed and the goods and files were moved up to the Wilcox Cash Grocery and that he paid $25 on that balance and offered to pay $77.75 with a check which was good and which was refused by appellee in full settlement of the account. He testified that they

were separate and distinct accounts and that he owed no balance to the Wilcox Cash Grocery at the time he began to trade at the Cashway Store, but that if he owed anything it was barred by the three-year statute of limitations. Appellee testified that it was all a continuing account and that the check for $25 paid to her on May 23, 1939, was paid on the account and without any direction on appellant's part that it should be credited to the account for the goods he purchased at the Cashway Store.

There is substantial testimony in the record to the effect that appellee owned both stores, and that both were operated by her as the Wilcox Cash Grocery under the names of Wilcox Cash Grocery and the Cashway Store; that the tickets and credits were issued from both stores in the name of Wilcox Cash Grocery and that the $25 check was made payable to Wilcox Grocery without any direction that it should be credited on the goods that had been purchased at the Cashway Store. In other words, there was substantial evidence to the effect that the dealings were between the same parties relative to the same character of goods partly purchased at each store both of which were owned by appellee, and that all the charges and credits were issued and entered as Wilcox Cash Grocery to appellant. The jury, therefore, could have found that it was a continuing open account, and that the credit for $25 was a credit on said account and properly applied thereon by appellee. There is no dispute in the evidence that appellant delivered to appellee a check for $77.75 for payment in full, but that appellee refused to accept it in full payment of the account and returned it to appellant after she had scratched her indorsement off the check and before she presented it for payment. We do not think as a matter of law that under the circumstances of the delivery and the retention of the $77.75 check for a few days and the return thereof to appellant amounted to an accord and satisfaction of the account or the debt. The issue of fact as to whether appellant owed any balance at the Wilcox Cash Grocery when he began to trade

at the Cashway Store was clearly a disputed question of fact and one for the jury to determine.

No errors in the instructions given by the court were pointed out by specific objection in the trial court to them and no instruction was offered by appellee more definitely defining the issues than they were defined by the court.

In the case of *McNeil* v. *Rowland,* 198 Ark. 1094, 132 S. W. 2d 370, this court said: "While it is true that these payments were made by appellant after the bar of the statute of limitations had attached, the rule seems to be well settled that, as between the parties, such a payment on a debt removes the bar and revives the debt. In the instant case the rights of third parties are not involved. In *Johnson* v. *Spangler,* 176 Ark. 328, 2 S. W. 2d 1089, 59 A. L. R. 899, this court held that a payment made after a note was barred revived the indebtedness and a new period of five years began to run from the date of payment and said, quoting Wood on Limitations, (4th ed.) vol. 1, p. 601; 'A part payment of a debt, though made after the bar of limitations has attached, removes the bar and revives the debt, but the revival cannot affect the rights of third persons attaching after the bar was complete and before the revival. Part payment on a debt operates as an acknowledgment of the continued existence of the demand, and as a waiver of any right to take advantage, by plea of limitations, of any such lapse of time as may have occurred previous to the payment being made. A partial payment made on account of an existing debt takes the case out of the statute of limitations. A partial payment of a note takes the entire debt out of the running of the statute, and time is computed from the date of such payment.' "

On the question of whether the retention of the check for $77.75 for a few days in which it was recited "for payment in full" where the check was refused and returned cannot be treated as an accord and satisfaction as a matter of law this court said in the case of *Cypress Drainage District of Perry & Conway Counties* v. *Blair,* 156 Ark. 130, 245 S. W. 310, quoting

syllabus two, that: "The question whether a check reciting that it was 'in payment of account for balance on clearing contract' was in full payment was for the jury, where the evidence was conflicting."

The judgment is affirmed.

SMITH, J., (dissenting).  The verdict of the jury is conclusive of the only two controverted questions of fact in this case, these being (a) whether Thomason owed or had paid the $278.82 account at the Wilcox Cash Store, and (b) whether the check for $77.75 had been tendered and accepted in full of Thomason's indebtedness to Mrs. Wilcox.  The decision of these two questions adversely to Thomason, so far from being decisive of this case, is, properly speaking, the point at which it begins.

Now the undisputed testimony is to the effect that Mrs. Wilcox had two stores, and the accounts due to each were as separately kept as if they had been owed to different persons, and not to the same person. Thomason denied that he owed the Wilcox Cash Store anything.  He admitted owing the Cashway Store $102.75. When the $25 payment was made the account at the Wilcox Cash Store was barred by the statute of limitations. It is undisputed that when the $25 cash payment was made no direction was given as to its application. Thomason assumed that it would be applied to the account which he admits owing, but he gave no direction to that effect. In the absence of this direction, Mrs. Wilcox had the right to apply the payment to either account, and she applied it to the one that was barred by the statute of limitations.  But this payment did not operate to revive the barred account.  It reduced it to the extent of the payment, but did not revive it as to the balance.

The law is settled that one may revive a barred account, and he does so when he makes a voluntary part payment thereon.  The theory of the law is that this is a recognition of the existence of the debt, from which a promise is implied to pay the balance.  But it is the debtor who must make the voluntary payment, and it is from his action that the implied promise to pay the

balance arises. The action of Mrs. Wilcox in applying the $25 credit on the barred account was not his action. She had the right to make the application which she did make, because she had no direction to the contrary, but she could not, by this act of hers, impute an intention to Thomason of which he was not advised.

In the chapter on Limitation of Actions, 17 R. C. L., § 289, p. 926, it is said: "As to the right of the creditor to apply the payment to one of several claims the cases have naturally divided themselves into three classes. In one class occur those cases where a creditor holds several distinct claims, none of which are barred by the statute, and the debtor makes a payment without any direction as to its application. Under these circumstances it seems to be generally held that the creditor may apply it upon one or distribute it among all the claims and thus interrupt the running of the statute according as he has applied it. Another class includes those cases where a creditor holds several claims against his debtor, part of which are barred by the statute. In such cases the weight of authority supports the doctrine that if a payment is made without specific application by the debtor, the creditor may apply it to any debt he chooses, but not to those which are barred so as to revive the obligation. Where this situation occurs it has been said that the presumption is that no direction being given by the debtor, he intended the payment to be applied as a credit on subsisting enforceable claims against him. A third class includes those cases where the creditor holds several separate claims, and the debtor makes a general payment upon his indebtedness without directing or authorizing the application thereof upon any one of the claims, all of which are then barred by the statute. In that event the general rule is the bar of the statute is not removed as to any of them. But where a payment is made with express reference to an account which includes as part of it statute barred items, and such payment is larger than the balance which, apart from the statute barred items, would have been shown by the account, that payment is declared to be an acknowledgment that the account is pending and an implied promise to pay the

balance. Although the weight of authority supports the conclusions stated there are some decisions to the effect that where a creditor has several items against his debtor, one barred by the statute of limitations and the others not, and a part payment is made by the debtor without any express appropriation by him at the time as to the particular debt to which it is to apply, the creditor is at liberty to appropriate the payment towards the satisfaction of that portion of the debt which the statute would bar, and thereby revive the unpaid portion of such debt.''

It thus appears that there is some authority for holding that, in the absence of express direction as to the application of the $25 payment by Thomason, Mrs. Wilcox had the right to apply the payment to the barred account, and thereby revive the unpaid portion thereof. This is said to be the minority rule, and I think should not be applied not only because minority rule, but because it is unsound in logic and contrary to the theory upon which a part payment of a barred account revives the balance.

In the case of *Chase* v. *Carney,* 60 Ark. 491, 31 S. W. 43, Mr. Justice BATTLE said: ''A part payment which will revive a debt barred by limitation, or form a new point from which the statute will begin to run, must be such as can be treated 'as an admission of the continued existence of the debt, and an implied promise to pay the balance.' But no such promise can, as a general rule, be 'implied' where the part payment is accompanied by circumstances or declarations of the debtor showing that it is not his intention to admit, by the payment, the continued existence of the debt, and his obligation to pay any balance. *Burr* v. *Williams,* 20 Ark. 189.''

In the case of *Wilson* v. *Pryor,* 44 Ark. 532, Chief Justice COCKRILL said: ''The presumption of a deliberate promise to pay the residue, which the fact of part payment raises, can arise only from what would be deemed an actual part payment.'' In other words, there must be a deliberate payment by the debtor from which to imply a promise to pay the residue, and Mrs. Wilcox

did not testify that such a payment was made. She states only that she applied the $25 payment to the barred debt because she was not otherwise directed. It is illogical and contrary to the law, as Chief Justice COCKRILL declared it to be, to impute to Thomason a promise arising, not from his deliberate and intentional action, but from that of Mrs. Wilcox which he did not direct. See, also, *Opp* v. *Wack,* 52 Ark. 288, 12 S. W. 565, 5 L. R. A. 743; *Gorman* v. *Pettus,* 72 Ark. 76, 77 S. W. 907.

Our case of *Johnson* v. *Spangler,* 176 Ark. 328, 2 S. W. 2d 1089, has an exhaustive annotator's note as reported in 59 A. L. R. 899. The fifth headnote there appearing reads as follows: "An unconditional payment upon a barred note, with nothing to rebut the presumption that it was intended as an admission of the debt evidenced by the note and an implied promise to pay the balance, is sufficient to remove the bar of the statute." The annotations leave no doubt that the great weight of authority is to the effect that a payment on a barred debt to revive the balance must be intentional, voluntary and unconditional, as variously expressed in the numerous cases there cited.

The $25 payment, applied as it was, operated to reduce the barred debt only to the extent of the payment, but it did not revive the residue.

The law, therefore, is, and, in my opinion, should be declared to be, that, as Thomason made no payment on the $102.75 account not barred by the statute of limitations, the judgment against him should have been for that amount, but for that amount only.

The majority opinion affirms the judgment, not only for the $102.75 account, but for the balance due on the barred debt, and I therefore, dissent.